**RIVER PARK TENANTS ASSOCIATION, et al.**

v.

**3600 VENTURE, et al.**

**GREEN HILL CONCERNED TENANTS ASSOCIATION, et al.**

v.

**GREEN HILL VENTURE, et al.**

Civ. A. Nos. 81–0566, 81–0567.

United States District Court, E. D. Pennsylvania.

May 4, 1981.

Jack M. Bernard, Philadelphia, Pa., for plaintiffs.

Steven A. Arbittier, Philadelphia, Pa., for defendants.

Gwendolyn T. Mosley, Deputy Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., for Commonwealth.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Pending before the Court are Motions To Dismiss The Complaint in the above captioned cases. For the reasons contained herein these motions will be granted and both complaints will be dismissed.

### I. *Procedural Background.*

The two complaints, both filed on February 12, 1981, challenge the constitutionality of Act No. 1980–82, the Pennsylvania Uniform Condominium Act, 68 Pa.Cons.Stat. Ann. § 3101 *et seq.* (hereinafter "the Act"). Aside from the fact that different parties are involved, the complaints are virtually identical, and the legal issues framed are the same, hence the need for only this one opinion as the reasoning contained herein applies with equal force to both cases.

The defendants' Motions To Dismiss were filed on March 2, 1981. Since the cases question the constitutionality of a state statute, the Court certified that fact to the Attorney General of Pennsylvania,[1] to afford the Commonwealth the opportunity to intervene as a defendant. The Commonwealth responded to this opportunity and filed Motions To Intervene As Defendant on April 10, 1981 which the Court granted. Thereafter, on April 16, 1981, the Commonwealth filed its own Motions To Dismiss The Complaint. The Court heard oral argument on the motions on April 24, 1981.[2]

### II. *Facts.*

The facts in these two cases are simple. In each case the defendants are in the process of converting and marketing the respective residential complexes—River Park House and Green Hill Apartments—into condominiums. The plaintiffs are associations of tenants at the two apartment buildings and individually named tenants who purport to represent, as a class, all of the tenants in the two complexes.

The complaints allege that two of the Act's provisions are unconstitutional. The first provision grants aged, blind or disabled tenants who have occupied their apartments for at least two years a two-year period of protection from lease terminations or rent increases following notice to the tenants that their apartments are being

---

1. 28 U.S.C. § 2403(b) provides:

   (b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

2. The Commonwealth as defendant-intervenor was represented at the oral argument by Gwendolyn T. Mosley, Esquire, Deputy Attorney General. Jack M. Bernard, Esquire, and Steven A. Arbittier, Esquire, counsel of record in both cases, argued for the plaintiffs and defendants, respectively.

converted into condominiums.[3] Plaintiffs have alleged that this provision is violative of the equal protection of the laws guaranteed by the Fifth and Fourteenth Amendments. The second provision under attack allows a condominium developer to convey units subject to a reserved option to withdraw designated real estate from the condominium at a later date.[4] Plaintiffs allege that the above provision allows for a deprivation of the original unit purchasers' property without the due process of law guaranteed by the Fifth and Fourteenth Amendments.

The relief sought by plaintiffs is a declaratory judgment that the Act is unconstitutional and also a permanent injunction preventing the Commonwealth from enforcing it. Plaintiffs have invoked this Court's jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 as well as alleging federal question and diversity jurisdiction.

### III. Motions To Dismiss

The primary thrust of the argument posed by the named defendants in their briefs supporting the motions to dismiss is that the Act is constitutional. The Commonwealth, on the other hand, as the intervening defendant, places primary focus upon the issue of justiciability. Specifically, the Commonwealth raises the question of whether the plaintiffs have demonstrated the requisite standing so that the dispute may be susceptible of judicial resolution.

■ The question of standing is one addressed to the jurisdiction of this Court and it therefore must be decided preliminarily. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), *reh. den.* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969). This threshold requirement is

imposed both by Art. III of the Constitution and by the express terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.[5] Therefore, the approach taken by the Commonwealth, which argued the standing issue first, is appropriate. Furthermore, because the Court agrees with the Commonwealth's argument that the plaintiffs have failed to demonstrate standing to sue, the Complaints will be dismissed on that basis.

The posture of this matter is a pending motion to dismiss and the Court has therefore accepted the factual allegations of the complaints and has read the complaints liberally. However, no matter how liberally these complaints are read they still fall short of demonstrating to this Court that a "case of actual controversy" is present.

■ An indispensable requirement of standing to sue is "that the parties seeking relief allege 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions ....'" *Jenkins, supra* at 423, 89 S.Ct. at 1849, *citing Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). These plaintiffs have alleged that § 3410 of the Act is unconstitutional, particularly §§ 3410(a) and (f). Section 3410(a) provides:

(a) Notice of conversion.—*A declarant of every conversion condominium shall give each of the tenants and any subtenant in possession of a unit or units in a building or buildings subject to this subpart notice of the conversion no later than one year before the declarant will require the tenants and any subtenant in possession to*

---

3. 68 Pa.Cons.Stat.Ann. § 3410.

4. 68 Pa.Cons.Stat.Ann. §§ 3205, 3206 and 3219.

5. Section 2201 provides:
   *In a case of actual controversy* within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954, or a proceeding under section 505 or

1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (Emphasis added).

*vacate.* The notice must set forth generally the rights of tenants and subtenants under this section and shall be mailed by prepaid United States registered mail return receipt requested to the tenant and subtenant at the address of the unit and not more than one other mailing address provided by a tenant. Every notice shall be accompanied by a public offering statement concerning the proposed sale of condominium units within such building or buildings. *Except as otherwise provided in subsection (f), no tenant or subtenant may be required by the declarant to vacate upon less than one year's notice.* Except by reason of nonpayment of rent, waste or conduct that disturbs other tenants' peaceful enjoyment of the premises and the terms of the tenancy may not be altered during that period. Failure of a declarant to give notice as required by this subsection is a defense to an action for possession. (Emphasis added).

Simply stated, tenants of an apartment complex, which is being converted into a condominium, are given one year to vacate, assuming they do not choose to purchase their apartment. An exception to the above provision is given to the "aged, blind or disabled" tenants (who have been living in their apartments for more than two years) in § 3410(f):

(f) Units leased to senior citizens and blind and disabled persons.—*For the purpose of this subsection, an eligible tenant or subtenant shall be a natural person who, at the time the notice described in subsection (a) is given by the declarant, is 62 years of age or older or is blind or disabled, and has occupied the unit for at least two years.* Within 30 days after receipt of the notice from the declarant referred to in subsection (a), any tenant, or subtenant, in possession of a unit, who believes that he is an eligible tenant or subtenant shall so notify the declarant and shall provide the declarant with proof of his eligibility. *Any eligible tenant or subtenant who has established his eligibility as aforesaid shall be entitled to remain in possession of his unit for two years following the date of the notice referred to in subsection (a), notwithstanding any prior termination date in his lease,* except by reason of nonpayment of rent, waste or conduct that disturbs other occupants' peaceful enjoyment of the condominium, and the terms of the tenancy may not be altered during the time period between the date on which the tenant's lease would otherwise terminate and the expiration of this two-year period except that the rental may be increased to the extent necessary to reflect any increase in real estate taxes and utility charges, applicable to the unit and not separately paid by the tenant, for the time period between the date of the notice referred to in subsection (a) and the date on which the tenant's lease would otherwise terminate. Failure of a declarant to comply with the provisions of this subsection is a defense to an action for possession. (Emphasis added).

Therefore, by the terms of the above provision, "aged, blind or disabled tenants" *who have lived in their apartments for at least two years,* are given two years to vacate instead of one year as provided in § 3410(a). However, aged, blind or disabled tenants *who have lived in their apartment for less than two years* are ineligible for the additional year within which to relocate provided in § 3410(f). Plaintiffs bring an equal protection challenge to the above classification based upon the length of residence[6] of the aged, blind or disabled tenants.

---

**6.** Plaintiffs have made it clear that they are not challenging the fact that aged, blind or disabled tenants are generally given more protection in the Act than the other tenants. Plaintiffs have conceded the constitutionality of this classification. *See* Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss The Complaint Under Rule 12(b)(6) And In Support Of Plaintiffs' Motion For Preliminary Injunction, Docket Entry 9 (81–0566) at 2. What is being challenged, however, is the further classification of the class of aged, blind or disabled tenants themselves, depending on how long they have resided in the apartment complex.

■ The complaints fail to allege that the plaintiffs bringing the action include aged, blind or disabled tenants who have lived in their apartments for less than two years—the very class of people affected by the above classification. However, even if this Court were to assume that there are such plaintiffs in the tenants' associations who brought these actions, which is an arguably proper assumption given that the complaints should be liberally construed, there is still no allegations that these supposed plaintiffs are injured by the classification, *i.e.*, that they need two years to relocate. Furthermore, and equally important, there is no allegation that the relief sought would remedy the hypothetical injury to the presumed plaintiffs.[7] · Indeed, if the Court concluded that this provision was unconstitutional and then granted the relief sought by the plaintiffs, which is an invalidation of the *entire* Act,[8] the plaintiffs might find themselves in a worse position than if the Act were to be upheld.[9]

■ The above reasoning pertaining to the standing issue applies with equal force, and perhaps more so, to the provisions which allow for a reserved option to withdraw specified real estate from a condominium.[10] Since in neither one of these cases have the respective declarants reserved the challenged option, any supposed injury pertaining to these provisions is rendered even more hypothetical.[11]

At oral argument the Court advised plaintiffs' counsel that it had serious questions regarding the standing of these plaintiffs.[12] Counsel for plaintiffs responded at oral argument and in its brief filed in opposition to the Commonwealth's motion with the somewhat novel argument that there is no need to demonstrate standing in a declaratory judgment proceeding.[13] Specifically, plaintiffs state that "the United States Supreme Court explicitly rejected the 'standing' issue in declaratory judgment proceedings of this nature."[14] Plaintiffs cite *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), in support of this proposition. Either plaintiffs are arguing for a very expansive interpretation of the holding in *Steffel* or they have overlooked the significant factual distinctions between that case and the present one. In *Steffel*, the petitioner alleged a threat of *criminal* prosecution under a state statute which he was challenging as unconstitutional. The threatened criminal prosecution was far from "imaginary or speculative" and the Court merely held that, *under those circumstances*, one does not have to expose oneself to arrest and prosecution in order to have standing to challenge a statute claimed to be violative of one's constitutional rights. *Id.* at 459, 94 S.Ct. at 1215–16.

---

7. In addition to showing an actual "case or controversy" in the constitutional sense and that the plaintiffs have a personal stake in the outcome of the controversy, it is essential that the plaintiffs also show "a logical nexus between the status asserted and the claim sought to be adjudicated ...." *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

8. As invalidation of the entire Act following a holding that this one provision is unconstitutional would probably be inappropriate in light of the severability provision found at 1 Pa. Cons.Stat. § 1925. It is clear from the oral argument by plaintiffs and their brief filed in opposition to the Commonwealth's Motion, Docket Entry 15 (81–0566), that their attack is as much one directed toward the wisdom of the Act as a whole, as it is one directed towards the Act's constitutionality. The vehicle chosen to question the legislative policy was to frame a constitutional challenge to the two particular provisions at issue and then to argue that, if they fall, the entire Act should follow.

9. For example, defendants suggested during the oral argument that, absent the Uniform Condominium Act, these tenants would have less protection from lease termination and eviction if they decided not to buy into a condominium which had been purchased and converted by a developer. *See* Transcript Of Oral Argument, Docket Entry 17, at 8–9.

10. *See* 68 Pa.Cons.Stat.Ann. §§ 3205 and 3206.

11. *See* Memorandum Of Law In Support Of The Commonwealth's Motion To Dismiss The Complaint, Docket Entry 14 (81 0566) at 5–7.

12. *See* Transcript Of Oral Argument, Docket Entry 17, at 23–24.

13. *See* Docket Entry 15 (81 0566) at 1 4

14. *Id.* at 3.

The distinguishing factors of *Steffel* are readily apparent. First, these plaintiffs are not challenging a criminal statute nor are they being threatened with a criminal prosecution. As the Court noted at the outset of the *Steffel* opinion, the question presented there was "whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made." *Id.* at 454, 94 S.Ct. at 1213. Second, the alleged harm in *Steffel* was real whereas in the present situation the Court can only imagine or speculate as to the nature of the harm. Finally, in relying upon *Steffel*, plaintiffs have overlooked abundant case law, both before and after *Steffel*, which make it clear that it does not stand for the proposition for which it is cited by plaintiffs.[15] For example, in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), relied upon in *Steffel*, the Court stated:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Six years later the Supreme Court stated:

> As is well known, the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite. *This is as true of declaratory judgments as any other field.*

*United Public Workers of America v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947) (emphasis added) (footnotes deleted). This is clearly the law today[16] and plaintiffs' assertion that "the Supreme Court has explicitly rejected the 'standing' issue in declaratory judgment proceedings of this nature" is simply wrong. For the foregoing reasons the Court will grant the motions to dismiss the complaints.

Since the Court is dismissing these complaints on jurisdictional grounds, the merits of plaintiffs' claim of unconstitutionality have not been discussed. However, the Court cannot resist noting, albeit dicta, that plaintiffs would have had a difficult task in convincing this Court of the validity of their equal protection challenge given the minimum level of scrutiny applicable to classifications of the type found in this statute. *Cf. Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *State of Minnesota v. Clover Leaf Creamery Company*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). The Court also views as persuasive both the Commonwealth's and the named defendants' position with regard to the due process challenge asserted by plaintiffs.

■ One issue remains for the Court's determination. The plaintiffs, by amendment to the complaint and motion in the River Park case (81–0566), seek a preliminary injunction.[17] They pose the alternative argument that if the statute is constitutional, defendants have failed to comply with its provisions because notice was sent to the River Park tenants of the impending conversion prior to a recordation of a declaration of condominium.[18] The Court agrees with the defendants that nothing in the

---

**15.** *See* note 14 *supra*, and accompanying text.

**16.** *See, e.g. Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979); *National Conference of Catholic Bishops v. Bell*, 490 F.Supp. 734 (D.D.C.1980).

**17.** *See* Docket Entry Nos. 3 and 4, (81–0566).

**18.** *See* Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss The Complaint Under Rule 12(b)(6) And In Support Of Plaintiffs' Motion For Preliminary Injunction, Docket Entry 9 (81–0566) at 16–18. (hereinafter "Plaintiffs' Opposing Memorandum").

statute prevents the giving of notice prior to recordation.[19] Furthermore, the crucial timing provision requiring one to vacate the apartment within one year is contingent upon the date of notice and not the date of recordation.[20] Finally, as with the constitutional issues, the Court can perceive no injury to the plaintiffs which would be redressed by a grant of the injunctive relief sought by the amendment to the complaint. Accordingly, the motion will be denied[21] and the "First Amendment To Complaint" in the River Park case will also be dismissed.

---

**19.** *See* Defendants' Supporting Memorandum, Docket Entry 7 at 17–20.

**20.** 68 Pa.Cons.Stat.Ann. § 3410(a).

**21.** The parties stipulated to a waiver of a preliminary injunction hearing and requested the Court decide the issue as a matter of law. *See* Docket Entry No. 18, (81 0566).