Hilliard Estate.

Argued October 5, 1955. Before STERN, C. J., STEARNE, JONES and MUSMANNO, JJ.

*I. E. Birsic*, with him *Thomas H. Cauley*, and *Cauley & Birsic*, for appellant.

*Robert A. Rundle*, with him *George I. Minch*, and *Wright & Rundle*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 14, 1955:

The Orphans' Court of Allegheny County dismissed a petition seeking specific performance of an alleged contract for the sale of real estate, owned by the estate of a decedent, which contract is averred to have been made by a co-fiduciary of the estate.

The basic facts are undisputed. The legal effect of letters, conversations and surrounding circumstances, is in controversy. Mary M. J. Hilliard, the decedent, was the owner of premises No. 204 South Homewood Avenue, Pittsburgh. Under her will she named the Union National Bank of Pittsburgh and Thomas A. Robinson executors, giving them full power of sale of real estate. On July 2, 1954, Mr. C. W. Doyle, an employe in the real estate division of the corporate fiduciary, mailed a circular letter to twenty-eight individuals, including seventeen or eighteen real estate brokers. The letter advised each of the addressees that the property in question was then available for purchase. The premises were described and the tax assessment given. The letter stated: "The property is being placed on the market at an asking price of $60,-000.00, subject to a reasonable offer. ALL offers are subject to the approval of the Co-Executors. . . ."

It also stated: "We will recognize as the broker in any transaction that person who first submits an offer on behalf of a purchaser, provided said offer is acceptable to the Co-Executors, a satisfactory agreement of sale executed, and the sale closed in accordance with the terms of the agreement.

"We will be glad to discuss the sale of this property with you at any time at your convenience."

C. L. Totten Company, real estate brokers, received one of the letters. On July 6, 1954, Mr. F. X. Totten of that company came to the bank, met Mr. Ralph F.

Torrence, its real estate officer, and stated that George S. Lipman (appellant), his client, had authorized him to pay $2,000 as hand money and to inform the bank that his client "was ready to buy the property for $60,000 cash as was asked."

The real estate officer testified, without contradiction: "I told [the broker] that I would take that offer with his check; that it was in accordance with the terms of our letter, subject to approval by the co-executors, including our Trust Investment Committee; that letters of a similar nature had been written to many real estate agents, and that as a fiduciary I had to give them a chance to see what they would do; and that I would present that to the Trust Investment Committee and the co-executor, and that it would probably be a while before I would have the answer." The check was accepted and deposited in the escrow account of the bank.

On July 8, 1954, the real estate officer wrote to the broker as follows: "I wish to acknowledge receipt of your check made payable to our order in the amount of $2,000.00, and representing hand money accompanying an offer submitted by you in behalf of George S. Lipman to purchase the Hilliard Estate property on South Homewood Avenue, 14th Ward, Pittsburgh, Pennsylvania, for $60,000.00 cash. May I advise that we have deposited this check with the understanding that such action does not denote acceptance of this offer. The offer is being submitted to our Trust Investment Committee and the Co-Executor of this Estate. If the offer is approved, the hand money will apply on the purchase price; if it is rejected, the hand money will be returned to you in full.

"I will advise as soon as possible concerning the disposition of this offer."

Thereafter the corporate co-fiduciary received a substantially higher offer for the property from another broker. This fact was communicated to the C. L. Totten Company, with an inquiry whether or not Dr. Lipman would increase his offer. The bank was informed by Mr. Totten that its client refused to increase the offer whereupon, on July 26, 1954, the bank advised the broker in a letter: "On Thursday, July 22, 1954, Mr. F. X. Totten called at our office and advised us that your principal was not interested in increasing his offer. The offer made by Dr. Lipman was thereupon rejected by our Trust Investment Committee and by the Co-Executor, who accepted the higher offer then in their possession."

Appellant contends that under the circular letter dated July 2, 1954, C. L. Totten Company became the agent of the co-fiduciaries of the estate, and that the acceptance by the agent of the Two Thousand dollar deposit resulted in the formation of an enforceable agreement between the co-fiduciaries of the estate and the appellant for the sale of the premises at Sixty thousand dollars. The circular letter, however, unequivocally stipulated that all offers were subject to the approval of the co-executors, and that no broker would be recognized unless offers submitted were acceptable to the co-executors and a satisfactory agreement of sale executed. Therefore, the circular letter merely constituted an invitation to bid. Since appellant's offer was not accepted by the co-executors, and no agreement of sale executed, no contract was ever consummated: *Upsal Street Realty Company v. Rubin*, 326 Pa. 327, 192 A. 481. An offer is distinguishable from preliminary negotiations for a contract and invitations to bid. See also *Berkowitz v. Kass*, 351 Pa. 263, 40 A. 2d 691; Williston on Contracts (1936 Ed.),

Vol. 1, sections 28, 28A; Restatement, Contracts, sections 25 and 26.

The decree of the court below is affirmed at the cost of appellant.