R. Glen **FENSTERMACHER**, Appellant,

v.

**PHILADELPHIA NATIONAL BANK**

and

Carson Investment Company.

No. 72–2134.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1973.

Decided Feb. 7, 1974.

Rehearing Denied April 8, 1974.

---

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for appellant.

Gregory M. Harvey, Philadelphia, Pa., for appellee Philadelphia Nat. Bank.

John P. Mason, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee Carson Investment Co.

Before BIGGS, ADAMS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The controversy *sub judice* arose from an attempt by appellee, Philadelphia National Bank [PNB], to sell 21,600 registered shares of Fidelity National Bank of Pennsylvania held as collateral on a loan.[1] In furtherance of its plan to sell the collateral, PNB sent notices soliciting bids to a list of possible purchasers, including appellant R. Glen Fenstermacher.[2] The shares were sold, however, to appellee, Carson Investment Company [CICO] other than pursuant to the announced bidding procedure.

Fenstermacher, as high bidder, commenced this action in the district court on November 10, 1972 alleging that the actions of both PNB and CICO violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and that PNB's refusal to deliver the shares to the appellant constituted a breach of contract under applicable Pennsylvania law.[3] Jurisdiction was predicated on 15 U.S.C. §§ 78(j) and 78aa, and 28 U.S.C. §§ 1331 and 1337.[4] Four days later, a hearing was held following which the district court denied Fenstermacher's request for preliminary relief and dismissed the action on the merits. 351 F.Supp. 1015 (E.D.Pa. 1972).

### I.

Fenstermacher challenges the procedure followed by the district court in which the hearing on the application for preliminary injunction was consolidated with the final hearing on the merits. It is asserted that the consolidation was effected without adequate notice and served to deprive appellant of due process and his right to a jury trial.

At the termination of the hearing, counsel for PNB stated: "Just one point, it will only take a second. Since we have had all testimony, I assume that this will be a final hearing as well as a preliminary hearing." The district judge responded as follows: "It is final and includes the preliminary hearing. It is complete. I hope we can come to an answer that will be complete for the time being." At that time Fenstermacher voiced no objection to this characterization of the proceedings but now contends that the trial court's statement was equivocal and untimely. It is less than pellucid from the record whether appellant was put on adequate notice of consolidation prior to this point in the hearing and given adequate opportunity

---

1. The original amount of the loan was $1,043,000, which was subsequently reduced to $1,018,000.

2. This list was supplied by the obligors on the underlying loan who had earlier attempted to sell the collateral.

3. Fenstermacher additionally requested a temporary restraining order to prevent PNB from transferring the stock. The restraining order issued but was ineffective since the stock had already been delivered to CICO.

4. Fenstermacher's claims under the Securities Exchange Act are sufficiently substantial to establish federal jurisdiction and standing. Appellant has alleged facts, such as solicitation and entry into a completed contract by PNB with the secret reservation *not to perform*, sufficient to maintain an action under traditional or modified require-

ments of the purchaser-seller limitation; the doctrine requiring that plaintiff must have either purchased or sold a security. *See, e. g.,* Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir. 1973); Mount Clemens Indus. Inc. v. Bell, 464 F.2d 339 (9th Cir. 1972); Richardson v. MacArthur, 451 F.2d 35 (10th Cir. 1971); Allico Nat'l Corp. v. Amalgamated Meat Cutters, 397 F.2d 727 (7th Cir. 1968); A. T. Brod & Co. v. Perlow, 375 F. 2d 393 (2d Cir. 1967); Ashton v. Thornley Realty Co., 346 F.Supp. 1294 (S.D.N.Y. 1972); Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.1968). Additionally, it is manifest that, at least in this circuit, the purchaser-seller requirement is not invariably the *sine qua non* of an action under Rule 10b-5, at least where equitable relief may prove appropriate. Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

to object. Assuming, however, that he was not, appellant's subsequent actions make clear that he was aware of the import of the statement and waived any defects which may have inhered in the procedure which was followed.

■ Rule 65(a)(2), Fed.R.Civ.P.[5] permits the trial judge to consolidate a hearing on an application for preliminary injunction with the trial of the action on the merits, on his own motion, either prior to or during the original hearing. The consolidation, however, must be accompanied by notice to the parties, either before or after the commencement of the hearings, sufficient to enable them to present all their evidence. *See* 7 J. Moore, Federal Practice ¶ 65.-04[4] (2d ed.1973); 11 Wright & Miller, Federal Practice and Procedure: Civil § 2950 (1973). Hence, the fact that consolidation was not formally announced until after the commencement of the hearing is not per se improper. The district court, in its Memorandum Opinion, stated that "all the parties did agree that the hearing which was held on November 14, 1972 was all the evidence that would be introduced if there would be a trial on the merits." This being the case, no error can be predicated on insufficiency of notice since its purpose had been served. Fenstermacher, however, disputes the existence of an agreement and asserts he has additional evidence to present.

■ Even had there been no agreement that all the evidence was presented, Fenstermacher waived any objection to the timeliness of the notice. At the conclusion of the November 14 hearing,

the district judge requested briefs of counsel and on November 17, 1972 appellant submitted a brief and a proposed order which contemplated solely a final adjudication on the merits.[6] Thus, it is manifest that appellant must have recognized the import of the district court's statement no later than the time he filed his brief and proposed order. By failing to object to the consolidation at any time and, further, seeking to use it for his benefit by actively soliciting final, equitable relief, Fenstermacher acquiesced in the procedure followed in the district court. Although we do not find reversible error in this procedure, it would be advisable in the future for district courts, when contemplating consolidation of the trial of the action on the merits with the hearing of an application for a preliminary injunction, promptly to notify counsel and request affirmative, on the record, response, especially where jury trial rights may be involved.

■ By way of challenging the expedited final hearing and in order to demonstrate that further evidence remains to be presented, Fenstermacher asserts as error the failure of the district court to permit certain depositions to be placed in evidence. Although Fenstermacher's conduct waived defects in notice, failure to consider proper evidence would have been error. The depositions in question were those of Messrs. Robert H. Potts and Charles E. Pancoast, III who were, respectively, Vice-Chairman and Senior Vice-President of appellee PNB. The district court ruled these depositions inadmissible on the grounds

---

5. The Rule provides in pertinent part:
Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. . . . This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

6. Appellant's brief and proposed order, in substance, requested the district court to di-

rect: redelivery of the shares by CICO to PNB; sale and transfer of the shares by PNB to Fenstermacher for the sum of $1,000,000; and that CICO and PNB be enjoined from taking any action to impede transfer of the shares to Fenstermacher and registration of the shares in his name in Fidelity's books and records. Costs of the action and reasonable attorneys' fees were also sought.

that the deposed parties were present and had testified.

█ Rule 32(a)(2), Fed.R.Civ.P., provides that the deposition of an adverse party or an officer, director or managing agent thereof, may be used for any purpose at a trial or hearing if otherwise admissible under the rules of evidence. This remains the case even though the deposed party has testified at the hearing. *See* 4 A J. Moore, Federal Practice ¶ 32.04 (2d ed.1972). The district judge's refusal to permit the introduction of the depositions into evidence was not prejudicial, however, since the depositions do not appear to add any information to that given in oral testimony by the deponents and otherwise developed at the hearing. *See* Pingatore v. Montgomery Ward and Co., 419 F.2d 1138 (6th Cir. 1969), cert. denied, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970); Zimmerman v. Safeway Stores, Inc., 133 U.S.App.D.C. 342, 410 F.2d 1041 (1969); Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467 (9th Cir. 1961).

█ Further, the district court was warranted in inquiring into the relevance of the proffered evidence. When questioned, counsel for appellant Fenstermacher said only: "To prove my case, your Honor." The district court was justified in refusing introduction of the depositions into evidence on this offer of proof.[7]

## II.

█ Fenstermacher's assertions with regard to the loss of his right to a jury trial are without merit. Although Rule 65(a)(2) preserves the right to jury trial and this right cannot be lost through determination of equitable claims, Beacon Theatres, Inc. v. Westov-

er, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), Fenstermacher effectively exercised a complete waiver. A waiver of such a fundamental right is not lightly implied. *See* Heyman v. Kline, 456 F.2d 123 (2d Cir.), cert. denied, 409 U. S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). Appellant, however, failed to request a jury trial[8] or object to consolidation when he must have realized that final adjudication on the merits was taking place absent a jury. More significantly, appellant actively solicited such a final adjudication in his brief and proposed order. We have no difficulty in finding a waiver on these facts.

## III.

█ Fenstermacher charges that the district court erred in denying the application for preliminary relief. Since, as stated *ante*, Fenstermacher consented to the consolidation of the hearing on application for preliminary injunction with the final hearing, the propriety of the denial of a preliminary injunction is moot. Appellant's objections will be considered as going to the merits of the final adjudication.

Fenstermacher asserts manifest violation of section 10(b) of the Securities Exchange Act, Rule 10b–5 and Pennsylvania contract law. An understanding of the facts is necessary for determination of these substantive questions.

PNB announced the proposed sale and bidding procedure by notices distributed on October 26, 1972. These notices required that the bids be presented by noon of November 9 and expressly reserved to PNB the right to reject any and all bids.[9] On October 27, 1972 appellee CICO first approached PNB with the intention of purchasing the Fidelity stock outside the bidding process.[10]

---

7. These depositions were not transcribed as of the hearing in this case, but counsel for appellant was present at the taking of the depositions the previous day and expressed no lack of recollection of their content.

8. Rule 38(b), Fed.R.Civ.P. requires that the demand for jury trial be filed within ten days after the service of the last pleading

directed to issues to be heard by the jury. Since, apparently appellees did not formally answer the complaint, this time has not yet elapsed.

9. *See, infra*, note 15.

10. CICO insisted that the shares not be exposed to an open bid.

Preliminary negotiations resulted in a tentative oral agreement that $991,000 would suffice as the selling price of the stock but such agreement was conditioned upon the contribution of part of the stated selling price by one of the underlying obligors and the further negotiation of various terms of sale. Subsequently, from November 3 to November 8, PNB advertised in various newspapers its intention to sell the stock.[11] Bids were solicited in these advertisements in accordance with the notice of October 26.

On November 9, approximately forty-five minutes prior to the announced noon deadline on bids, CICO and PNB executed a written contract for the sale of the stock at the previously agreed upon price. At 11:55 A.M. Fenstermacher's bid for one million dollars was submitted. On November 10, PNB and CICO rescinded the instrument of the previous day and executed a new contract specifying the selling price as one thousand dollars in excess of the Fenstermacher bid. PNB promptly rejected all submitted bids in favor of its contract with CICO.

In its memorandum opinion, the district court found that no contract or scheme existed between the appellees that would give rise to a violation of the securities law. The court's characterization of the October 27, 1972 meeting between CICO and PNB in which the price of $991,000 was agreed upon, as merely preliminary negotiations is not clearly erroneous. These negotiations culminated in a written contract on November 9, the day Fenstermacher's bid was received. At the time of the original bid solicitation, no sale of the stock outside the bidding process was in the offing. At the time the subsequent newspaper advertisements appeared, only preliminary negotiations were on-going. No contract existed which foreclosed sale to the highest bidder until November 9, 1972.

The district court found additional support for its position that there was no scheme violating the securities law in its finding that PNB's conduct was consonant with reasonable commercial practice. Fenstermacher had, on October 17, 1972, expressed an interest in purchasing the stock in question for a *maximum* price of $40 per share. Moreover, on October 27, upon returning a telephone call from Fenstermacher, PNB was informed that Fenstermacher had gone to Florida. These circumstances, according to the district judge, led PNB to believe that no bid exceeding CICO's October 27 offer of approximately $46 per share would be forthcoming.[12] The market price of the stock at this time was approximately $34 to $35 per share. Further, PNB had reason to believe its conduct was reasonable since the notice soliciting bids contained unequivocal language to the effect that the bank could, in its discretion, reject any and all bids.

The district court's finding that there was no fraudulent conduct forecloses recovery under Rule 10b–5 to the extent that Rule predicates liability on a device, scheme or artifice to defraud. Even assuming PNB's refusal to

---

11. The following is illustrative of the newspaper advertisements:

NOTICE OF PROPOSED SALE
OF STOCK

The Philadelphia National Bank, Broad and Chestnut Streets, Philadelphia, Pa. proposes to entertain sealed bids for the purchase of 21,600 shares of the capital stock of Fidelity National Bank of Pa., Williamsport, Pa. to be received at the desk of Daniel H. Ort at the Philadelphia National Bank not later than noon on Thursday, November 9, 1972. All bids must be submitted on forms provided by the Philadelphia National Bank stating the conditions of sale and will be subject to those conditions. Copies of the bid forms and the conditions of sale may be obtained by calling Daniel H. Ort, (215) 629–3622 or by writing to him at the Philadelphia National Bank, Philadelphia, Pa. 19101.

The Philadelphia National Bank

12. The actual bidding process produced only two bids, viz., Fenstermacher's and CICO's, which confirmed PNB's belief these would be the only interested parties.

deliver the stock to Fenstermacher amounted to a breach of contract, it is manifest that this will not suffice to establish liability on this theory of the securities law absent a showing of actionable fraud. *See, e. g.*, Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973); Richardson v. MacArthur, 451 F.2d 35, 40 (10th Cir. 1971); Allico National Corp. v. Amalgamated Meat Cutters, 397 F.2d 727, 729–730 (7th Cir. 1968); A. T. Brod & Co. v. Perlow, 375 F.2d 393, 398 (2d Cir. 1967). Fenstermacher has failed to meet his burden.

■ This does not, however, end our inquiry into possible violation of Rule 10b–5. Albeit the district court found no scheme, device, or intention to defraud, it did not consider the possibility that failure of PNB to disclose ongoing negotiations amounted to a material omission sufficient to establish liability under the Rule. It is clear that in a non-disclosure situation, any required element of scienter is satisfied where, as here, the defendant had actual knowledge of the material information. Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir. filed Dec. 21, 1973).[13]

■ Normally, it would be for the district court to determine when, if ever, the negotiations between CICO and PNB became sufficiently substantial so that the obligation devolved on the seller of the stock to disclose the conduct, potentially abortive of the bidding process. In making this determination, the established doctrine of materiality must, of course, be considered. *See* Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971); Rochez Bros., Inc. v. Rhoades, *supra,* 491 F.2d at 408.

■ However, assuming, without deciding, that at some point in the bidding process PNB failed to reveal material information to the potential bidders, specifically including Fenstermacher, we fail to see how he would be entitled to relief. Fenstermacher failed to show an inadequate remedy at law justifying equitable relief. Clearly expenses incident to submitting his bid could be recovered if the assumed violation of Rule 10b–5 were, in fact, proved. Additionally, there was no showing that the stock could not be purchased on the open market. The testimony established that no attempt was made to purchase the stock in this manner.[14] Having failed to establish the necessity of equitable relief, Fenstermacher would be limited to a recovery of money damages and these, as discussed below, were not proved. Hence, the failure of the district court to make findings concerning the liability

13. As is pointed out by the appellees, many of the cases involving frustrated purchasers of stock focus on the necessity of proving fraudulent intent in order to bring a defendant's action within the purview of Rule 10b–5. It would appear that quite often proof of intention to defraud correspondingly proves the material omission. For example, proof that a party entered into a contract with limited intention of performing demonstrates both the fraud, rising over and above mere breach of contract, and the failure to disclose an intention contrary to that manifested by that party in dealing with the plaintiff. *Cf.* Walling v. Beverly Enterprises, *supra.* In the instant case, however, there is conduct *viz.*, negotiation outside the bidding process, plainly inconsistent with the announced auction, non-disclosure of which might violate Rule 10b–5, independent of an express finding of fraudulent intent.

14. Had PNB disclosed the ongoing negotiations with CICO at the outset, it is far from certain that Fenstermacher could have successfully obtained the stock. As a result of the information Fenstermacher might have decided to withhold his bid, proceed with submitting his bid or enter into negotiations outside the bidding process. The first alternative would certainly have relieved the appellant of some of the costs of submitting a bid and the second would leave him in his present position. The outcome of the third alternative is highly speculative but at least would have avoided the costs of making a nugatory bid although probably substituting the costs involved in open negotiation.

It is not without significance that Fenstermacher did not suggest in his testimony that he would have entered negotiations outside the bidding process had he been so informed.

of appellees under non-disclosure standards was harmless.

## IV.

 Fenstermacher asserts that the district court erred in denying him relief under Pennsylvania law. This contention is premised upon the theory that PNB's solicitation of bids was an offer which Fenstermacher accepted by submitting the highest bid. The district judge found, however, that the notice soliciting bids and subsequent newspaper advertisements were merely invitations to make an offer. This finding was premised on the language of the original notice, stating: "The Bank reserves the right . . . to reject any and all bids."

Appellant relies on the Pennsylvania decision of Jenkins Towel Service, Inc. v. Fidelity-Philadelphia Trust Co., 400 Pa. 98, 161 A.2d 334 (1960), to demonstrate that a contract resulted despite the terminology indicated. In that case the Pennsylvania Supreme Court construed a letter requesting bids as an offer which was accepted by the plaintiff in submitting the highest bid. The offer contained the caveat that: "The Trustees of course, reserve the right to approve or disapprove of any and all offers, or to withdraw the properties from the market." This clause was deemed to create an ambiguity in view of the tenor of the notice in its entirety which contemplated a complete offer. The Court deemed positive language such as: "[B]ids will be opened and an Agreement of Sale tendered to the highest acceptable bidder provided the offer is in excess of $92,000 cash, free and clear of any and all brokerage commissions," and the inclusion of the terms of the Agreement of Sale, inconsistent with an unfettered right to disregard any and all bids. Having determined the existence of an ambiguity, the Court focused on the surrounding circumstances in which the notice was sent and interpreted the notice most strongly against the sender. 400 Pa. at 104–106, 161 A.2d at 337–338.

There is no such ambiguity in the notice of proposed sale sent to Fenstermacher.[15] Acceptance of the bid

---

15. The conditions of the solicitation letter were as follows:

October 26, 1972

CONDITIONS OF PROPOSED PRIVATE SALE OF 21,600 SHARES OF THE CAPITAL STOCK OF FIDELITY NATIONAL BANK OF PA.

To Those Interested in the Proposed Private Sale by The Philadelphia National Bank of 21,600 Shares of the Capital Stock of Fidelity National Bank of Pa., Williamsport, Pa.:

You are hereby notified of the following conditions to be observed in connection with the proposed private sale by this Bank of the collateral pledged with it under a certain loan of February 25, 1971, being 21,600 shares of the capital stock of Fidelity National Bank of Pa.:

1. This Bank will entertain sealed bids for the purchase of the shares. All such bids must be received at the desk of Charles E. Pancoast, III, Senior Vice President, at the Main Office of this Bank, Broad and Chestnut Streets, Philadelphia, not later than noon on Thursday, November 9, 1972.

2. No bid for less than all of the 21,600 shares will be entertained.

3. All sealed bids must be accompanied by a certified check payable to the order of this Bank in the amount of 10% of the bid. Said amount will constitute partial payment if the bid is accepted and the purchase completed; will be returned if the bid is not accepted; and will be retained by this Bank as liquidated damages in the event that the bid is accepted but the bidder fails to complete his purchase in accordance with these conditions of sale.

4. The high bidder meeting the foregoing conditions will, subject to paragraph 8 below, be promptly notified of acceptance of the bid; whereupon the remainder of the purchase price will be payable by receipt at this Bank as aforesaid, within five business days after such notification is given to the successful bidder, of a certified check payable to the order of this Bank in the amount of the unpaid balance.

5. Consummation of the contract of sale will be made immediately upon receipt of the full bid price by delivery of the single stock certificate for 21,600 shares and a blank stock power executed by all five registered owners of the stock, but without delivery of a bill of sale, without guarantee of signatures,

by PNB is made expressly subject to the reserved right to reject any and all bids submitted. Further, the surrounding circumstances are insufficiently compelling to warrant deviation from the ordinary Pennsylvania rule that an invitation to bid does not constitute an offer. *See, e. g.,* Fraim v. Lincoln University, 428 Pa. 436, 239 A.2d 305 (1968); In re Hilliard Estate, 383 Pa. 63, 117 A.2d 728 (1955); Leskie v. Haseltine, 155 Pa. 98, 25 A. 886 (1893).

### V.

■ One further contention of appellant merits brief discussion. It is asserted that the district court ignored various claims for damages stated in Fenstermacher's amended complaint. There is more than surface appeal to the assertion that having been requested to submit a bid, an individual is at least entitled to have his bid considered, albeit without guarantee of success. To the extent claims for expenses of preparing a bid are not foreclosed by the necessary implications of the district court opinion, Fenstermacher's actions in that court preclude recovery of money damages. Having requested such relief in his complaint, appellant presented no evidence whatsoever on the issue of money damages. The costs of preparing and submitting a bid were not disclosed, and Fenstermacher testified that he made no attempt to purchase the stock on the open market. Additionally, in his brief and proposed order, no relief by way of money damages was requested with the exception of costs of the action. No error was committed by the district court in failing to directly address issues neither substantiated by the presentation of evidence nor pressed by counsel.

The judgment of the district court will be affirmed.

---

without payment of any transfer or other tax, and without representation or warranty by this Bank. Reference is made to the Uniform Commercial Code (Sections 8–301 and 9–504) for a statement as to the rights received by the purchaser and the discharge of the security interest of this Bank.

6. In accordance with the terms of the agreement between this Bank and its borrowers in the loan for repayment of which the stock has been pledged, this Bank has given notice to Fidelity National Bank of Pa. that this Bank has exercised its right to vote the shares. Should there be a meeting of the shareholders of Fidelity National Bank of Pa. for which the record date for determination of shareholders entitled to vote is a date prior to that of registration of the shares on the records of Fidelity National Bank of Pa. in the name of the successful bidder, this Bank will execute a proxy in favor of or in accordance with the written directions of the purchaser, provided that the purchaser has completed his purchase and received delivery of the shares as mentioned above.

7. By the act of submitting a bid the bidder waives any right to a statement by this Bank of such knowledge as this Bank may have concerning Fidelity National Bank of Pa.

8. This Bank reserves the right to waive any irregularity in a bid and to reject any and all bids submitted to it.

9. All bids shall be submitted by filling in the appropriate blanks below and signing the form in which they appear.

> THE PHILADELPHIA
> NATIONAL BANK
> Charles E. Pancoast
> Senior Vice President
> , 1972.

The undersigned hereby submits a bid of $———, accompanied by certified check of 10% thereof, upon the foregoing stated conditions which have been read.

(signature) . . . . . . . . . . . . . . . . . .
(print name) . . . . . . . . . . . . . . . . . .
(address) . . . . . . . . . . . . . . . . . .
 . . . . . . . . . . . . . . . . . .