**Edward G. JACKSON and Louis Jackson, Plaintiffs-Appellants,**

**v.**

**CHEVRON CHEMICAL COMPANY, Defendant-Appellee.**

No. 81–4454
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 28, 1982.

---

Charles C. Jacobs, Jr., John Kirkham Povall, Cleveland, Miss., for plaintiffs-appellants.

Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Edward and Louis Jackson appeal from a jury verdict absolving Chevron Chemical Company from liability for crop losses the Jacksons sustained on their farm, allegedly as a result of ineffective insecticide treatment with Chevron products. They raise a number of points about the jury instructions and other asserted trial errors. Taking a different view of the record, we affirm.

### Getting the Bugs Out

Professor John Ouzts, a professor at Delta State University, approached the Jacksons, farmers in Cleveland, Mississippi, in early 1979 with a proposal. Chevron Chemical Company wanted to use farm land in

the area to perform tests of insecticide effectiveness. Ouzts, who received a fee of $4500 for his services, suggested that the Jacksons make their farm available to Chevron. He told them that Chevron would make good any loss of cotton production from their acreage that resulted from ineffective insecticide treatments.

The Jacksons agreed to Ouzts' proposal. The final letter of agreement between Ouzts and Chevron, on which they relied, limited the company's liability to the "differential (difference in lint cotton harvested, from standard of comparison) crop purchase of acreage with ineffective chemical treatment(s); standard of comparison being either standard treatment or last year's harvest for corresponding acreage." It also disclaimed liability for "extreme environmental conditions or acts of God."

In May 1979, Ouzts divided the farm into ten segments, which provided for eight research plots, a standard check plot (which received no treatment) and one plot on which Ouzts applied what he considered a standard insecticide in the area. As part of his commission for Chevron, he kept charts of the insect rates, rates of insecticide applied, etc.

It appears that 1979 was rather an unusual year for cotton farmers in the Mississippi delta. Insects found greener fields to pester, so the insect population was quite low. Rainfall, however, was extremely heavy. It averaged 150% of a normal year's precipitation, or about 30 inches above average.

When the cotton was harvested, the Jacksons reaped a wide range of average yields from the different plots, from 52 to 591 pounds per acre. They demanded that Chevron recompense them for lost crops. Chevron refused, denying that the low harvest resulted from ineffective insecticide treatment and asserting that the heavy rainfall, an extreme environmental condition for which it was not responsible, had diminished the crop yields.

The Jacksons brought suit against Chevron, claiming in effect that the company had guaranteed the crop. The jury returned a verdict for Chevron, on which the Court entered judgment. .The Jacksons moved for judgment notwithstanding the verdict and for new trial, which the Court denied. This appeal followed.

### *See, Hear and Speak No Weevil*

■ The Jacksons first argue that the Court erred in not instructing the jury that Ouzts was authorized to arrange with a farmer to conduct the research project. This claim has no merit. No one denied that Ouzts had such authority. Chevron acknowledged that he had full power and responsibility to contract with the Jacksons. If a court need not offer an instruction in exactly the party's language, *Fleming v. Michigan Mutual Liability Company*, 363 F.2d 186, 189 (5th Cir. 1966), then it certainly need not offer an instruction on a point that was not even in issue.

■ Next, the Jacksons label as erroneous the trial court's admission of evidence of custom or usage to construe the oral contract. The Jacksons assert, in effect, that Chevron had guaranteed their crops against everything but a nuclear holocaust or the invasion of the body snatchers. Chevron, relying upon *Chase Manhattan Bank v. First Marion Bank*, 437 F.2d 1040 (5th Cir. 1971), introduced evidence that no chemical company in its right corporate mind would ever make such a blanket guarantee. In *Chase Manhattan*, this Court held that the trial court erred in refusing to admit similar evidence, stating:

Certainly the parol evidence rule does not preclude evidence of course of dealing or usage of trade, for such evidence merely delineates a commercial backdrop for intelligent interpretation of the agreement.... Disclosure of a course of dealing or usage of trade does not delimit a particular party's intent, except insofar as it reveals that some ascribed intent might be ludicrous in the commercial world.

437 F.2d at 1046 (citations omitted). The trial court correctly permitted Chevron to introduce its evidence.

■ Third, the Jacksons urge that the higher than average rainfall did not amount to an "extreme environmental condition" so as, under their oral contract, to release Chevron from liability. The testimony at trial provided more than adequate grounds for a fair-minded jury to find that the high rainfall which produced vegetative plants and excessive weeds that combined to cause poor cotton yields, was an extreme environmental condition. Adequate evidence existed also to establish that the insecticide treatments were quite effective. The Seventh Amendment and a long line of cases in this Circuit protect the jury's factual determinations. *Boeing Company v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc). *See also Maxey v. Freightliner Corporation*, 665 F.2d 1367 (5th Cir. 1982) (en banc). The jury's finding must stand.

■ The Jacksons claim that the trial court erred in admitting evidence impeaching their figures about crop yield. Caught, in effect, with their hands in the cookie jar, they take offense against the act of putting on the lid. While the Jacksons both testified that they had planted approximately 130 acres in cotton, with an average yield of 592 pounds per acre, they submitted to the Sunflower County Agricultural Stabilization and Conservation Service certified figures showing that they had planted 203.8 acres in cotton. The total yield per acre, using that acreage figure, would be 377.25 pounds per acre—substantially less.

Certainly this information was relevant for the jury in determining what damages, if any, the Jacksons suffered. Moreover, as impeachment evidence this information of public record was entirely proper. The Jacksons, who cite no case support on this point, impliedly recognize that the trial court did not err in admitting it.

■ Finally, the Jacksons argue that the Court erred in refusing to admit into evidence the deposition of Greg Rich, a Chevron employee and Ouzts' primary contact at the company. As Chevron points out, Rich was present at the trial. Indeed, he testified for Chevron and was thoroughly cross-examined by the Jacksons' attorney. The Jacksons thus had the opportunity to impeach Rich with any inconsistencies they might find between his live testimony and his deposition. They now claim that the deposition would have proven "invaluable" and rest their argument that the trial judge erred on the fact that Rich was a "managing agent" of Chevron within the meaning of F.R.Civ.P. 32(a)(2).[1] Even if the deposition was properly admissible under Rule 32(a)(2), we believe that any possible error was not prejudicial and was, in fact, harmless. The deposition contains no information that Rich's live testimony could not supply.

In *Fenstermacher v. Philadelphia National Bank*, 493 F.2d 333 (3d Cir. 1974), the Third Circuit, on quite similar facts held that the exclusion of the deposition was "not prejudicial ... since the depositions do not appear to add any information to that given in oral testimony by the deponents and otherwise developed at the hearing." 493 F.2d at 338. *See also Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978) (refusal to admit deposition was not prejudicial).

We find no merit in any of the Jacksons' other allegations of trial error.

The judgment is, in all respects, correct. AFFIRMED.

---

1. **Use of Depositions in Court Proceedings**

   (a) **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

\* \* \* \* \* \*

(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.