196

482 A.2d 240

TOURAINE PARTNERS

v.

Herbert T. KELLY, Cecilia Perez Combs, Joel D. Beaver, Vivian Green, Patricia Risoli and Linda Risoli, John H. Evants, Stanley I. Gibell, Ruth S. Steppacher, David Feingold, Timothy G. Cutler, S.G. Winson.

TOURAINE TENANTS ASSOCIATION (an unincorporated association under the laws of the Commonwealth of Pennsylvania) by David FEINGOLD, Trustee ad litem, and Cecilia Perez Coombs, Trustee ad litem, and Julian Fox, substituted Trustee ad litem, Appellants,

v.

TOURAINE PARTNERS, a limited partnership under the laws of the Commonwealth of Pennsylvania, and Sargo III Inc., sole general partner of Touraine Partners, and Robert Sheridan & Partners, a partnership and Robert Sheridan, an individual, and Marc Sheridan, an individual, and Marks & Co., Inc., a corporation and Robert Demchik, an individual, and Barbara Leff, an individual, and Raymond Fleisher, an individual and Touraine Associates, a limited partnership.

Superior Court of Pennsylvania.

Argued Feb. 2, 1984.

Filed Aug. 31, 1984.

Petition for Allowance of Appeal Denied Jan. 9, 1985.

198

Jerome J. Shestack, Philadelphia, for appellees.

Joseph S. Moloznik, Philadelphia, for appellants.

Before SPAETH, President Judge, and BECK, and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal presents a novel issue concerning the construction of the term "declarant" under the Pennsylvania Uniform Condominium Act, 68 Pa.C.S.A. § 3101 *et seq.* For the reasons stated herein, we affirm the order of the lower court.

The facts are as follows:[1] In the late summer or early fall of 1980, J.E. Marks, general partner of Touraine Associates (then owner of The Touraine apartments), determined that The Touraine required extensive improvements. Accordingly, the apartment management instituted a policy of renewing tenant leases only on a month-to-month or other short-term basis. On October 29, 1980, Robert Sheridan of Robert Sheridan & Partners, a limited partnership, entered into a purchase and sale agreement with Touraine Associates, whereby he acquired The Touraine for approximately $3,500,000. Sheridan then assigned his interest to Touraine Partners, a newly formed partnership. At the time of the sale, Sheridan expected to open The Touraine as a condominium following the completion of a major renovation and restoration program. The acquisition and closing documents recognized Touraine Partners' right either to convert the building into a condominium or to continue to use it as a rental apartment building. In mid-December, 1980, because of changed market conditions, Touraine Partners reevaluated the likelihood of reopening the building as a condominium, and by mid-January, 1981, when it received the deed from Touraine Associates, it was seriously reconsidering the feasibility of opening as a condominium and regarded reopening as a rental apartment building as "a very serious alternative". On January 30, 1981, Touraine Partners distributed a letter to all Touraine residents, noti-

1. We accept these findings of fact which were affirmed by the lower court *en banc* and are supported by sufficient evidence. *See Sobel v. Sobel,* 435 Pa. 80, 84, 254 A.2d 649, 651 (1969); *Yuhas v. Schmidt,* 434 Pa. 447, 453, 258 A.2d 616, 619 (1969); *Agsco Equipment Corp. v. Borough of Green Tree,* 297 Pa.Superior Ct. 33, 36, 443 A.2d 284, 286 (1981); *Frowen v. Blank,* 266 Pa.Superior Ct. 145, 147, 403 A.2d 585, 586 (1979).

fying them that because of the renovation program, leases would be honored until their expiration date but would not be renewed, and that financial benefits would be forthcoming to those willing to enter into early lease terminations. Approximately 100 tenants chose early lease termination and received an option to return to The Touraine when it reopened as either a rental apartment building or a condominium.

On or about February 17, 1981, The Touraine Tenants Association commenced an equity action against Touraine Partners, Sargo, III, Inc. (sole general partner of Touraine Partners), Robert Sheridan, Robert Sheridan & Partners, and Marks & Co. (managing agent for The Touraine), seeking to prevent Touraine Partners from evicting individual tenants of The Touraine and to stop the renovation project. Settlement negotiations continued through the summer of 1981, during which time Touraine Partners' counsel repeatedly referred to the occupying tenants, whose various leases expired in March, May, June or August of 1981, as illegal holdover tenants. Touraine Partners accepted rent checks tendered for July and August, but refused rent payments for September and thereafter. On July 21, 1981, at a meeting between Touraine Partners and the Touraine tenants at the Bellevue Stratford Hotel, Touraine Partners expressed its willingness to make available to the tenants certain benefits detailed in the Pennsylvania condominium statute, provided the tenants terminated the litigation. Also in July, Touraine Partners began the restoration program and entered into a contract with Turner Construction Co. for that purpose.

On September 15 and 16, 1981, Touraine Partners filed a complaint in equity and motions for preliminary injunction against two of the occupying tenants, seeking immediate possession of the occupied premises and the defendants' ejectment. Touraine Partners subsequently filed similar actions against ten other occupying tenants. On September 28, the twelve defendants answered the motions, claiming that because Touraine Partners had converted The Touraine

into a condominium, the condominium statute entitled them to at least one year's additional occupancy and, in some cases (because of age), two years. Contrary to Touraine Partners' assertion, they also claimed that they were not illegal holdovers but were occupying under valid leases which had not been terminated or had been terminated improperly under the Landlord and Tenant Act, 68 Pa.S.A. § 250.101 *et seq.*

In the October, 1981 issue of the *WFLN Radio Guide,* there appeared a full-page advertisement proclaiming the availability of condominium homes in The Touraine.

On October 2, 5, 6, 7 and 9, 1981, the Chancellor held hearings on the motions for preliminary relief. On October 9, the court consolidated the twelve actions against the individual tenants with the tenants' original action, and, because of the extensive testimony taken, considered the hearing as final.

In the November 2, 1981 issue of *Time* magazine, the November 9, 1981 issue of *Newsweek,* and the December 2, 1981 issue of *Business Week,* there appeared advertisements on the availability of condominium homes in The Touraine.

On November 3, 1981, the tenants filed a motion to reopen testimony alleging that the November advertisements constituted after-acquired evidence. On December 2, 1981, the Chancellor filed a Decree Nisi, granting the injunctive relief requested by Touraine Partners and denying the tenants' requested relief. The court refused to reopen testimony and the holdover tenants were ordered to vacate the premises within 30 days. On December 14, the tenants' exceptions were hand-delivered to the trial judge. On January 13, 1982, the lower court *en banc* dismissed the exceptions and entered the Decree Nisi as a Final Decree. On January 15, Touraine Partners executed the Declaration of Condominium for The Touraine, which was recorded in the

Deed Book of Philadelphia County on February 9, 1982. On February 11, the tenants filed the instant appeal.[2]

Appellants contend that the lower court erred in holding that Touraine Partners was not a "declarant" under the 1980 Pennsylvania Uniform Condominium Act, 68 Pa.C.S.A. § 3101 *et seq.*, (the Act). The term "declarant" is defined, in pertinent part, as follows: "(2) If the condominium has not yet been created, 'declarant' means any person who *offers to dispose* of or disposes of his interest in a unit not previously disposed of." *Id.* § 3103 (emphasis added).[3] Under § 3410 of the Act, a "declarant" of a conversion condominium [4] must give occupying tenants at least one year's notice of the conversion before requiring them to vacate and the right to purchase their units.[5] Here, the lower court specifically found that: "72. Touraine Partners neither disposed of nor offered to dispose of an interest in any unit at The Touraine." (Lower Court Opinion at 16). Although this finding was affirmed by the lower court *en banc,* we believe that this finding of "fact" is more properly characterized as an interpretation of statutory law, and hence do not hesitate to review it. Indeed, the disposition of this case turns on the correct construction of the phrase "offers to dispose" in the Act's definition of declarant.

**2.** On March 15, 1982, the lower court granted Touraine Partners' motion for sanctions and ordered the tenants' counsel to pay attorneys fees of $2,500 to the Touraine Partners.

**3.** If the condominium has been created, then a "declarant" is defined, in relevant part, as "any person who has executed a declaration". 68 Pa.C.S.A. § 3103. Under the Act, a condominium is created by recording an executed declaration. *Id.* § 3201(a). Therefore, in the instant case, because the Declaration of Condominium for The Touraine was not recorded until February 9, 1982, the Touraine condominium had not yet been created during the relevant time period.

The term "person" is defined to include natural persons, corporations and partnerships. *Id.* § 3103.

**4.** A "conversion condominium" is "[a] condominium containing any building that at any time before recording of the declaration was occupied wholly or partially by persons other than purchasers and persons who occupy with the consent of purchasers." 68 Pa.C.S.A. § 3103.

**5.** *See* 68 Pa.C.S.A. § 3410.

The term "dispose" is defined in the Act as "[a] voluntary transfer of any legal or equitable interest in a unit, other than as security for an obligation", 68 Pa.C.S.A. § 3103; however, the term "offer" is not defined. Appellants contend, therefore, that the definition of the term "offering" contained in the Act controls:

Any *advertisement*, inducement, solicitation or attempt to encourage any person to acquire any interest in a unit other than as security for an obligation. An advertisement in a newspaper or other periodical of a general circulation, or in any broadcast medium to the general public, of a condominium not located in this Commonwealth, is not an offering if the advertisement states that an offering may be made only in compliance with the law of the jurisdiction in which the condominium is located.

68 Pa.C.S.A. § 3103 (emphasis added). Accordingly, appellants argue that the advertisements appearing in the October, 1981 issue of the *WFLN Radio Guide* and subsequently in other magazines constituted "offers to dispose" of condominium units within the meaning of "declarant", thereby entitling them to notice and the option to purchase under § 3410.

Appellees, however, contend that the lower court correctly interpreted "offers to dispose" to mean *contractual* offers. Therefore, they argue that because the advertisements did not quote any prices, they were too indefinite to constitute "offers" and, hence, did not result in Touraine Partners becoming a declarant under the Act.

In order to resolve this dispute, we turn to the language and background of the Act itself. Section 3410 provides, in pertinent part:

(a) Notice of conversion—*A declarant of every conversion condominium shall give each of the tenants* and any subtenant in possession of a unit or units in a building or buildings subject to this subpart *notice of the conversion no later than one year before the declarant will require the tenants and any subtenant in possession to vacate.... Every notice shall be accompanied*

*by a public offering statement concerning the proposed sale of condominium units within such building or buildings.* Except as otherwise provided in subsection (f), no tenant or subtenant may be required by the declarant to vacate upon less than one year's notice, except by reason of nonpayment of rent, waste or conduct that disturbs other tenants' peaceful enjoyment of the premises and the terms of the tenancy may not be altered during that period. Failure of a declarant to give notice as required by this subsection is a defense to an action for possession.

(b) Offer to tenant to purchase unit.—*For six months after delivery or mailing of the notice described in subsection (a), the declarant shall offer to convey each unit or proposed unit occupied for residential use to the tenant who leases that unit.* If a tenant fails to purchase the unit during that six-month period, the declarant may not offer to dispose of an interest in that unit during the following six months at a price or on terms more favorable to the offeree than the price or terms offered to the tenant. . . .

. . . .

(d) Notice to vacate.—If a notice of conversion specifies a date by which a unit or proposed unit must be vacated, the notice also constitutes a notice to quit specificed by section 501 of the act of April 6, 1951 (P.L. 69, No. 20), known as "The Landlord and Tenant Act of 1951."

. . . . .

(g) Tenant meetings; open to the public.—At least 30 days before the notice of conversion is given, the declarant shall hold a tenant meeting open to the public in the municipality where the conversion is proposed at a place and time convenient to the persons who may be directly affected by the conversion.

68 Pa.C.S.A. § 3410 (emphasis added). This provision makes it clear that a public offering statement must be prepared before the notice of the conversion can be given and that the occupying tenant must receive the first offer to purchase the unit. Then, if the tenant declines to pur-

chase the unit within the six-month period, the declarant cannot offer to dispose of the unit during the following six months on terms more favorable to the offeree than the terms offered to the tenant. Under § 3406, unless certain exceptions apply, a declarant must provide a purchaser of a unit with a copy of the public offering statement not later than the date of any contract of sale. 68 Pa.C.S.A. § 3406. Unless the purchaser is given the public offering statement more than 15 days before execution of a contract for the purchase of a unit, the purchaser may, before conveyance, cancel the contract within 15 days after receiving the statement. *Id.* The required content of the public offering statement for conversion condominiums is outlined in §§ 3402 and 3404, and includes a description of the proposed condominium the declarant's schedule of construction, the types of financing offered by the declarant, and copies of the contracts and leases to be signed at closing. *See* 68 Pa.C.S.A. §§ 3402, 3404.

The Pennsylvania Condominium Act is based upon the 1977 Uniform Condominium Act (UCA), §§ 1–101 *et seq.*, 7 U.L.A. 101 (1978). The definition of "declarant" in § 3103 of the Pennsylvania Act corresponds, in relevant part, to the definition of "declarant" in § 1–103(10) of the UCA.[6] Comment 7 to § 1–103 contains the following explanation:

> The definition of "declarant" focuses on two distinct time periods regarding the condominium: before and after the condominium has been created.
>
> . . . .
>
> The definition also focuses on those circumstances where liability should be imposed upon a potential declarant before the condominium is created. In those circumstances, the declarant would not meet the definition contained in subsection (10)(i). *It is a common market practice in some states, however, for a prospective de-*

6. The 1977 UCA was amended in 1980, but the amended version has not been adopted by Pennsylvania. As amended, § 1–103(9) of the 1980 UCA defines a "declarant" as "any person or group of persons acting in concert who (i) as part of a common promotional plan, offers to dispose of his or its interest in a unit not previously disposed of[.]" 1980 UCA § 1–103, 7 U.L.A. 124, 131 (Supp.1983).

*clarant to sell or to offer to contract to sell condominiums units to prospective purchasers before the condominium is created. In such a case, the offeror would meet the definition of a declarant* contained in subsection (10)(ii).

UCA § 1–103 comment 7 (emphasis added). Additionally, the comments to § 4–106 of the UCA, upon which § 3406 of the Pennsylvania Act is based, contemplate situations in which the declarant and a prospective purchaser enter into a "nonbinding reservation agreement", whereby the purchaser reserves the right to buy a unit but is not contractually bound to do so. UCA § 4–106 comment 3.[7]

■ In light of the provisions of the Pennsylvania Act and the comments to the UCA, we find appellees' construction of "offers to dispose" in the definition of declarant as contractual offers reasonable. The Act clearly contemplates certain limited situations when a person could become a declarant prior to the execution of the declaration of condominium. The alternate definition was added because, in practice, developers often sold or offered to sell condominium units before the condominium was even created. This offer, whether to occupying tenants or to other prospective purchasers, comes in the form of the public offering statement. Under contract law principles, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."

---

**7.** Applicable Pennsylvania caselaw on the subject is sparse. *Sargo, II, Inc. v. City of Philadelphia,* 488 F.Supp. 1045, 1052–53 (E.D.Pa.1980), involved a 1979 city ordinance providing that a condominium conversion would be unlawful unless the tenants were given one year's advance written notice "of the owner's intention to convert to a condominium by a date certain specified therein". *Id.* The district court held that substantial compliance with this ordinance, which had been enacted pursuant to the Pennsylvania Unit Property Act, 68 P.S. § 700.101 *et seq.* (repealed 1980), was sufficient. In *River Park Tenants Association v. 3600 Venture,* 534 F.Supp. 45, 50–51 (E.D.Pa. 1981), the court held that under the Pennsylvania Uniform Condominium Act, developers were not prevented from giving notice of the impending conversion prior to the recordation of a declaration of condominium. *See also* 68 Pa.C.S.A. § 3410 note 2 (*citing River Park Tenants Association v. 3600 Venture, supra*).

*Restatement (Second) of Contracts* § 24 (1981). "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.* § 26. "Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell." *Id.* § 26 comment b. An advertisement is an invitation to the public to come and purchase. *Id.* § 26 illus. *Accord, Hilliard Estate,* 383 Pa. 63, 117 A.2d 728 (1955) (offer is distinguishable from preliminary contract negotiations and invitations to bid).

Accordingly, we reject appellants' construction of "offers to dispose" to include advertisements as inconsistent with the Act.[8] Instead, we hold that when the condominium has not yet been created, a declarant under the Pennsylvania Uniform Condominium Act is one who has prepared and delivered a public offering statement to a prospective purchaser with the intent of concluding a sale of a condominium unit with that purchaser. Therefore, the developer of a conversion condominium becomes a declarant under the Act only upon his delivery of the notice of intent and public offering statement to the occupying tenant, thereby triggering the tenant's six-month option to purchase.

In the instant case, it is apparent that Touraine Partners cannot be considered a declarant. Throughout the

---

**8.** Appellants' construction of "offers to dispose" to include advertisements is also overly broad. In a situation such as the instant case, it would be both unrealistic and unwarranted to hold that a general advertisement suffices to trigger § 3410, thereby requiring the developer to give notice of an uncertain conversion and allowing the tenants to buy into a condominium which may never exist. We agree with appellees' conclusion that the term "offering" has relevance only with respect to the optional Article 5 provisions of the 1977 UCA. Article 5, which Pennsylvania did not adopt when it adopted the rest of the UCA in 1980, provides for state agency regulation and registration of residential condominiums. *See id.* § 5–110 comment 2 (foreign condominium must only be registered in the enacting state if a declarant is "offering" the condominium in the enacting state).

relevant time period, it became increasingly uncertain as to the feasibility of reopening the building as a condominium and consequently never prepared (or delivered) a public offering statement or entered into any preliminary negotiations for the sale of condominium units. Although The Touraine management did commence a major renovation and restoration program, such work was necessary, regardless of whether the premises reopened as a condominium or as an apartment rental building, because of the building's deterioration.

■ Moreover, even if Touraine Partners had been a declarant under the Act, we would not grant appellants' requested relief because of our finding that appellants were illegal holdovers whose leases had been properly terminated under the Pennsylvania Landlord and Tenant Act, 68 Pa. S.A. § 250.101 *et seq.* The Landlord and Tenant Act provides that its three-months notice provision may be modified or waived by the tenant under the terms of the particular lease. *Id.* § 250.501.[9] Here, The Touraine management determined the need for extensive improvements and began its policy of not renewing or renewing only on a short-term

9. Section 250.501 of the Landlord and Tenant Act provides, in relevant part, that:

A landlord desirous of repossessing real property from a tenant may notify, in writing, the tenant to remove from the same at the expiration of the time specified in the notice under the following circumstances, namely, (1) upon the termination of a term of the tenant, (2) or upon forfeiture of the lease for breach of its conditions, (3) or upon the failure of the tenant, upon demand, to satisfy any rent reserved and due, where there is not personal property on the premises adequate to satisfy the rent in arrears except such property as is by this act exempt from levy and sale on distress for rent.

In case of the expiration of a term or of a forfeiture for breach of the conditions of the lease where the lease is for any term of less than one year or for an indeterminate time, the notice shall specify that the tenant shall remove within thirty days from the date of service thereof, and when the lease is for one year or more, then within three months from the date of service thereof....

The notice above provided for may be for a lesser time or may be waived by the tenant if the lease so provides.

68 Pa.S.A. § 250.501.

basis in late 1980. It notified its tenants in January, 1981 of the nonrenewal of their leases because of the renovation program. Cecilia Perez Coombs, a tenant with a multi-year residential lease containing a 90-day termination notice provision, received notice of lease renewal for only one year on March 14, 1980. A year later, on March 13, 1981, she received 90 days written notice of nonrenewal, expiring on June 30, 1981. On August 20, 1981, she received a notice to vacate, but continued to occupy the premises. Her tendered rent for July and August, 1981 was accepted by Touraine Partners, but her rent for September and thereafter was refused. Herbert T. Kelly, M.D., a tenant with a commercial lease containing a 90-day termination notice provision, received a letter on January 15, 1981 from Marks & Co., informing him that his lease would naturally expire on April 30, 1981 and would be renewed only on a month-to-month basis. On January 23, he was informed that his tenancy would in all likelihood be terminated promptly. On February 13, he received a letter notifying him that his tenancy would terminate on May 31, 1981. He requested a lease extension to August 31, 1981, and Touraine Partners expressed its willingness, provided he agreed to vacate then. Kelly did not agree and continued to occupy beyond May 31. His tendered rent checks for June, July and August were accepted. On August 20, he received an additional notice to vacate by August 31, 1981. Kelly's rent tendered for September, 1981 and thereafter was refused. Timothy Cutler, a tenant with a residential lease which expired on March 31, 1981, received a letter dated April 2, 1981 from Marks & Co., in which he was advised: "Inasmuch as you are, in fact, still living in the building, even though you are trespassing, we shall continue to charge you on a day to day basis until the courts permit us to evict you." These tenants were among the twelve defendants in appellees' action in ejectment. It was not until approximately one month after the last of these tenants' leases had expired that The Touraine advertisement appeared in the October, 1981 *WFLN Radio Guide*. Therefore, in removing the condominium aspect of the case, what remains is an

apartment building which was forced to undergo major repairs because of deteriorating structures and systems, and whose tenants' leases expired by their terms and were not renewed because of the renovation.[10]  The fact that appellees considered reopening The Touraine as a condominium is not justification for appellants' illegally holding over after the expiration of their leases.  We find implicit in the Pennsylvania Condominium Act that § 3410's purpose is the protection of tenants with properly *existing* leases.

██ Accordingly, having found that Touraine Partners was not a declarant under the Pennsylvania Uniform Condominium Act and that appellants were not entitled to any of the Act's benefits, we must affirm the order of the court below.[11]

Affirmed.

SPAETH, President Judge, filed a concurring opinion.

SPAETH, President Judge, concurring:

I concur in the majority's affirmance of the trial court's order, but write separately because my analysis differs

10.  The record supports the lower court's finding that Touraine Partners did not engage in any conduct tending to coerce or harass the tenants into early lease terminations. *See* Lower Court Opinion at 18–19.

11.  Appellants also contend that the lower court erred in (1) refusing to permit the admission into evidence of alleged after-discovered evidence; (2) changing the temporary injunction proceedings to permanent injunction proceedings;  and (3) entering the March 15, 1982 order sanctioning the tenants' counsel.  We find these contentions meritless.  First, the after-discovered evidence, namely, the November advertisements in *Time* and *Newsweek*, was cumulative, sought to impeach credibility, and unlikely to change the result of the hearing; therefore, the lower court did not abuse its discretion in denying appellants' motion to reopen testimony. *See Freed v. Priore*, 247 Pa.Superior Ct. 418, 424, 372 A.2d 895, 898 (1977); *Hydro-Flex, Inc. v. Alter Bolt Co., Inc.*, 223 Pa.Superior Ct. 228, 232, 296 A.2d 874, 877 (1972).  Next, the record indicates that appellants' counsel agreed to the preliminary hearing being considered a hearing on both a preliminary and final injunction or, at least, failed to object to the lower court's ruling during the conference and hearing. *See* N.T. October 9, 1981 at 5.71–5.72. *See also* Lower Court Opinion at 4 and 4 n. 6. Lastly, no appeal was taken from the March 15, 1982 order and therefore we will not consider the issue. *See* Pa.R.A.P. 903(a).

somewhat from the majority's. Appellants were not entitled to the protections of the Condominium Act if their leases were validly terminated under the Landlord Tenant Act before Touraine Partners became a declarant. On appeal appellants argue that the advertisement in the October 1981 WFLN Philadelphia Guide constituted an offer under the Condominium Act, thereby making Touraine Partners a declarant under the Act. Unlike the majority, I find it unnecessary to decide whether the advertisement constituted an offer under the Condominium Act. I think it sufficient to note that on appeal appellants have not effectively challenged the trial court's conclusion that appellants' leases were validly terminated under the Landlord Tenant Act prior to the publication of the October 1981 WFLN Guide.

Appellants' statement of questions does not challenge the trial court's conclusion. The statement of questions reads as follows:

I.  Did the lower court err in holding that Sheridan/Touraine Partners was not a "Declarant" within the meaning of the Pennsylvania Uniform Condominium Act?
Answer: Yes, the court did so err.

II.  Did the lower court err in refusing to permit after discovered evidence?
Answer: Yes, the court did so err.

III.  Did the lower court err in transforming these proceedings from that involving a temporary injunction proceeding to that involving a permanent injunction proceeding after the close of the testimony on the temporary injunctions without allowing tenants/appellants an opportunity to present testimony in support of the allegations of their complaint in equity?
Answer: The court did so err.

"[O]rdinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Pa.R.A.P. 2116. *See Commonwealth v. Unger*, 494 Pa. 592, 594 n. 1, 432 A.2d 146, 147 n. 1 (1980) (issue not included in statement of questions not preserved on appeal);

*Keller v. Old Lycoming Township*, 286 Pa.Super. 339, 343 n. 3, 428 A.2d 1358, 1360 n. 3 (1981) (issues not stated as questions involved on appeal will not be considered).

Moreover, the references in the text of appellants' brief to the trial court's conclusion are vague and do not effectively challenge the trial court's analysis. In their statement of the case at page 8 appellants state generally that the August 1981 notice did not meet the 30 and 90 day notice requirements of the Landlord Tenant Act, but this statement is not explained or developed in the argument section of the brief, and therefore should not be considered on appeal. *See Giant Markets, Inc. v. Sigma Marketing Systems, Inc.*, 313 Pa.Super. 115, 126 n. 2, 459 A.2d 765, 771 n. 2 (1983) (issue raised in summary of argument and not carried forward in the brief will not be considered). In their first argument at page 20 of their brief, appellants say that the October 1981 WFLN Guide was first distributed during the last week of September. However, there is no evidence in the record to support this contention. Quite to the contrary, Mrs. Coombs testified that she first saw the October 1981 Guide "When it was first published in October." N.T. 2.174. In any case, appellants have not challenged the trial court's determination that under the Landlord Tenant Act and the terms of Paragraph 21 of their leases, the August 20, 1981, notice was sufficient to require the tenants to surrender possession in 5 days.

Given the effectively unchallenged conclusion that appellants' leases were validly terminated under the Landlord Tenant Act prior to publication of the October 1981 WFLN Guide, I should hold that appellants have not established that the trial court erred in holding that they were not entitled to the protections of the Condominium Act. Even if the advertisement did constitute an offer and Touraine Partners thereby became a declarant, only tenants legally in possession at that time would be entitled to the protections of the Act.[1]

1. I agree with the majority's disposition of appellants' remaining arguments, *see* Majority Opinion 210 n. 10, except that I would not

address the third argument as it is not raised in appellants' statement of questions.