Citation Nr: 1222001 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 09-03 508A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to an increased rating for service-connected posttraumatic stress disorder, currently evaluated as 50 percent disabling.

2. Entitlement to a total rating for compensation purposes based upon individual unemployability.


ATTORNEY FOR THE BOARD

K. M. Schaefer, Associate Counsel








INTRODUCTION

The Veteran served on active duty from June 1966 to June 1968. This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in June 2006 and October 2009 by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas. 

In a May 2012 submission, the Veteran referenced a claim for service connection for a back disorder that was on appeal. However, a claim of entitlement to service connection for lumbosacral strain was denied in an unappealed September 2005 rating decision, and the record does not show that the issue is currently on appeal. Therefore, the Veteran's statement raises the issue of whether new and material evidence has been submitted to reopen the claim of entitlement to service connection for a back disorder. As the record does not reflect that any action has been taken by the RO on this this issue, it is referred to the RO for appropriate disposition.

The issue of entitlement to a total rating for compensation purposes based upon individual unemployability (TDIU) is remanded to the RO via the Appeals Management Center in Washington, DC. 


FINDING OF FACT

Throughout the period on appeal, the Veteran's posttraumatic stress disorder (PTSD) was manifested by depressed and/or anxious mood, restricted affect, irritability, exaggerated startle response, hypervigilance, chronic sleep impairment, nightmares, difficulty concentrating, fair insight and judgment, and few social relationships. 



CONCLUSION OF LAW

The criteria for entitlement to a rating in excess of 50 percent for PTSD have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §4.130, Diagnostic Code 9411 (2011). 


REASONS AND BASES FOR FINDING AND CONCLUSION

With respect to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2011). 

Proper notice from VA must inform the Veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The RO's May 2006 letter to the Veteran satisfied the duty to notify provisions relating to the Veteran's claim at issue herein. 38 U.S.C.A. § 5103 (a); 38 C.F.R. 
§ 3.159 (b)(1); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claim, including the opportunity to present pertinent evidence. For these reasons, the Board finds that the content requirements of the notice VA is to provide have been met and no further development is required regarding the duty to notify. See Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

The duty to assist the Veteran has been satisfied in this case. The RO has obtained the Veteran's VA treatment records and Social Security Administration (SSA) records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Moreover, the Veteran has been afforded VA examinations that are adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Specifically, the June 2006, September 2007, September 2009, and April 2011 VA examiners took into account the Veteran's statements and treatment records, which allowed for a fully-informed evaluation of the claimed disability. Id. This case was remanded by the Board in March 2011 for the purpose of scheduling another VA examination and obtaining records from the Social Security Administration (SSA), as well as any additional private treatment records identified by the Veteran. A review of the post-remand record shows that the Veteran did not report any additional private treatment records, his SSA records were added to the claims file, and he was afforded a VA examination in April 2011.
 
As such, there is no indication in the record that additional evidence relevant to the issues being decided herein is available and not part of the record. See Pelegrini, 18 Vet. App. at 120. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); see also Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2011). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. See 38 

U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2011). Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function, will be expected in all cases. 38 C.F.R. § 4.21 (2011); see also Mauerhan v. Principi, 16 Vet. App. 436 (2002). 
 
The current regulations establish a general rating formula for mental disorders. 38 C.F.R. § 4.130. Ratings are assigned according to the manifestation of particular symptoms. However, the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan, 16 Vet. App. 436. Accordingly, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). Id. 

Pursuant to Diagnostic Code 9411, PTSD is rated as 50 percent disabling for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory, such as retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent evaluation is warranted where there is objective evidence demonstrating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to suicidal ideation; obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression 

affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. 

Finally, a maximum 100 percent evaluation is for application when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

In evaluating the evidence, the Board has noted the various Global Assessment of Functioning (GAF) scores that clinicians have assigned. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See DSM-IV; Carpenter v. Brown, 8 Vet. App. 240 (1995). For example, A GAF score of 41-50 contemplates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or social functioning (e.g., no friends, unable to keep a job). A GAF score of 51-60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). A GAF score of 61-70 contemplates some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. While a GAF score is highly probative as it relates directly to the Veteran's level of impairment of social and industrial adaptability, as contemplated by the rating criteria for mental disorders, the GAF scores assigned in a case are not dispositive 

of whether overall improvement has been established; rather, they must be considered in light of the actual symptoms of the Veteran's disorder. See 38 C.F.R. § 4.126(a). DSM-IV at 46-47. 

At a June 2006 VA examination, the Veteran reported that he had been depressed since October 2005 when he had a seizure, resulting in him being unable to drive. He also stopped working at that time. His daily activities included watching TV, walking, going to a Senior Center with his spouse and occasionally visiting a friend. He reported getting four to five hours of sleep per night, often interrupted by nightmares. He indicated that he gets startled when unaware someone is around and does better by himself. The Veteran stated that he did not go out often, but when he did, he sits with his back to the wall. He said that war movies irritated him. He was married to his spouse of 31 years and that they generally got along well and were close. The Veteran stated that he had concentration problems and had difficulty staying focused on things. The examiner observed that the Veteran was casually groomed and cooperative, and that eye contact was almost nonexistent. He displayed some anxiety and dysphoria. Speech was within normal limits. Affect was appropriate. Thought processes and associations were logical and tight; there was no loosening of associations or confusion. He was oriented in all spheres and memory was grossly intact. The Veteran denied hallucinations, and no delusional material was noted. He also denied suicidal and homicidal ideations. Insight and judgment were adequate. The examiner said the Veteran's symptoms ranged from moderate to severe. A GAF score of 49 was assigned.

At a September 2007 VA examination, the Veteran stated that not much had changed since the previous examination. He averaged four to five hours of sleep per night with nightmares two to three times per week. He continued to be startled easily. He avoided watching war movies and news about the current war, as well as going out to large stores. The Veteran was married to the same spouse and they got along "alright." He regularly made visits to an old friend with whom he grew up. The examiner observed that the Veteran was casually groomed and cooperative. He displayed some anxiety, and eye contact was very limited. Speech was within normal limits. Affect was somewhat restricted, but appropriate. Thought processes 

and associations were logical and tight; there was no loosening of associations. He was oriented in all spheres and memory was grossly intact. The Veteran denied hallucinations, and no delusional material was noted. He also denied suicidal and homicidal ideation. Insight and judgment were adequate. The examiner said the Veteran's symptoms were moderate and that little change was foreseeable in the Veteran's functioning over the next six to 12 months. A GAF score of 49 was assigned. 

At a September 2009 VA examination, the Veteran stated that he was had the "same old problems." He averaged four to five hours of sleep per night, but denied having nightmares about his Vietnam experiences. He reported being jumpy and bothered by loud noises, especially if unexpected. If he went out, he would not sit with his back to people and had to force himself to go to large stores with his spouse. He avoided watching war movies, but did watch the news. The Veteran was married to the same spouse and described their relationship as fair. He visited a friend who was not a veteran. The examiner observed that the Veteran was casually groomed and cooperative. He displayed anxiety and dysphoria, and eye contact was very limited. Speech was occasionally. Affect was appropriate to content. Thought processes and associations were logical and tight; there was no loosening of associations or confusion. He was oriented in all spheres and memory was grossly intact. The Veteran denied hallucinations, and no delusional material was noted. He also denied suicidal and homicidal ideation. Insight and judgment were adequate. The examiner said the Veteran's symptoms were moderate and that little change was foreseeable in the Veteran's functioning over the next six to 12 months. A GAF score of 53 was assigned.

At the April 2011 VA examination, the Veteran reported sleeping four to five hours per night and taking a 90 minute nap every day. He indicated that he and his spouse of 36 years would not go out to eat often, but that he went to the gym at least a couple of times per week. He continued to avoid crowds, as well as war movies and pictures of the then-current unrest in Libya. The examiner observed that the Veteran was casually groomed and cooperative; his eye contact was good. Mood was euthymic, and affect was appropriate. Speech was within normal limits. 

Thought processes and associations were logical and tight; there was no loosening of associations or gross confusion. He was oriented in all spheres and memory was grossly intact. The Veteran denied suicidal or homicidal ideation. His insight and judgment were deemed fair. The examiner said the Veteran's symptoms were mild. The GAF score assigned was 56. 

The Veteran received counseling and medication management for his PTSD several times per year. These VA treatment records reveal that the Veteran's symptoms were largely consistent with the VA examinations, reflecting fluctuations in the degrees of anxiety, depressed mood, irritability, avoidance, and hypervigilance and limitations of affect experienced by the Veteran. GAF scores ranged from 45 in June 2006 to 62 in April 2009. 

The Veteran's GAF scores do not demonstrate a rating in excess of that currently assigned for PTSD symptomatology. Massey v. Brown, 7 Vet. App. 204, 207 (1994) (noting that a GAF score is highly probative, as it relates directly to a veteran's level of impairment of social and industrial adaptability, as contemplated by the rating criteria). The Veteran's GAF scores throughout the appeal period were from 45 to 62, which demonstrate symptoms that are chronic and expectable reactions to psychosocial stressors, such as having few friends and avoidance and hypervigilance in crowds with moderate impairment in social or occupational functioning with occasionally severe symptoms. See DSM-IV at 46-47. 

Although GAF scores are important in evaluating mental disorders, the Board must consider all the pertinent evidence of record and set forth a decision based on the totality of the evidence in accordance with all applicable legal criteria. See Carpenter, 8 Vet. App. at 242. Accordingly, an examiner's classification of the level of psychiatric impairment, by word or by a GAF score, is to be considered but is not determinative of the percentage VA disability rating to be assigned; the percentage evaluation is to be based on all the evidence that bears on occupational and social impairment. Id.; see also 38 C.F.R. § 4.126 (2010); VAOPGCPREC 10-95, 60 Fed. Reg. 43186 (1995). 

Based on the totality of the evidence, the Veteran's PTSD symptoms do not meet the criteria for a rating in excess of 50 percent at any time during the appeal period. In this regard, overall the Veteran's PTSD was manifested by depressed and/or anxious mood, restricted affect, irritability, exaggerated startle response, hypervigilance, chronic sleep impairment, nightmares, difficulty concentrating, fair insight and judgment, and few social relationships. The Veteran's symptoms did not include suicidal ideation; obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; or the inability to establish and maintain effective relationships. Although he had limited relationships, these relationships were good. Accordingly, the Veteran's symptoms do not meet the schedular criteria for a rating in excess of 50 percent for PTSD at any time during the appeal period. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Generally, evaluating a disability using either the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2011). However, because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but would still be adequate to address the average impairment in earning capacity caused by disability. Nevertheless, in exceptional cases where the rating is inadequate, it may be appropriate to assign an extra-schedular rating. 38 C.F.R. § 3.321(b) (2011). 

The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate, a task performed either by the RO or the Board. Id.; see Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating [S]chedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Therefore, 

initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. 

The Veteran's disability picture is not so unusual or exceptional in nature as to render the already assigned rating inadequate. PTSD is evaluated under mental disorders the criteria of which is found by the Board to specifically contemplate the level of occupational and social impairment caused by this disability. 38 C.F.R. § 4.130, Diagnostic Code 9411. The Veteran's PTSD was manifested by depressed and/or anxious mood, restricted affect, irritability, exaggerated startle response, hypervigilance, chronic sleep impairment, nightmares, difficulty concentrating, fair insight and judgment, and few social relationships. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's symptoms are congruent with the disability picture represented by the 50 percent disability rating for PTSD. Evaluations in excess of 50 percent are provided for certain manifestations of PTSD, but as noted above, the evidence demonstrates that those manifestations are not present in this case. The criteria for the 50 percent rating reasonably describe the Veteran's disability level and symptomatology. Consequently, the schedular evaluation is adequate and that referral of the Veteran's case for extra-schedular consideration is not required. See 38 C.F.R. § 4.114, Diagnostic Code 9411; see also VAOGCPREC 6-96; 61 Fed. Reg. 66749 (1996). 

Finally, in reaching the decision that a rating in excess of the 50 percent evaluation is not warranted, the Board considered the doctrine of reasonable doubt. However, as discussed above, the preponderance of the evidence is against a rating in excess of 50 percent, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

A rating in excess of 50 percent for PTSD is denied. 


REMAND

An opinion was received from the April 2011 VA examiner with respect to the Veteran's employability. However, the records from the Veteran's application and award of disability benefits from the SSA were not in the file until after the examination; the examination report also does not reflect that the examiner was aware the Veteran was receiving SSA disability. The SSA determination indicates that the Veteran's PTSD was a factor in his disability and inability to work for SSA purposes. VA is not bound by the findings of disability and/or unemployability made by other agencies, including the SSA. See Collier v. Derwinski, 1 Vet. App. 413, 417 (1991). However, such a finding is probative of the degree of functional impairment the Veteran has due to his service-connected PTSD. Therefore, the Board determines that another VA examination should be scheduled.

Accordingly, the case is remanded for the following actions:

1. The Veteran must be afforded the appropriate VA examination to determine the effect of his service-connected disabilities on his ability to obtain and retain substantially gainful employment. The claims file and all records on Virtual VA must be made available to the examiner, and the examiner must specify in the examination report that the claims file and Virtual VA records have been reviewed. The examiner must specify the dates encompassed by the Virtual VA records that were reviewed. All tests and studies deemed necessary must be performed. All pertinent symptomatology and findings should be reported in detail. The VA examiner must elicit from the Veteran and record for clinical purposes a full work and educational history. Based on the evidence of record, the clinical evaluation of the Veteran, and with consideration of the Veteran's statements, the examiner must provide an opinion as to whether the Veteran's service-connected disabilities alone or acting in concert, preclude him from securing and following substantially gainful employment consistent with his education and occupational experience. This opinion must be provided without consideration of either his nonservice-connected disabilities or age. 

A complete rationale for the opinion advanced must be provided. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner. The report must be typed. 

2. The RO must notify the Veteran that it is his responsibility to report for the examination and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2011). In the event that the Veteran does not report for the aforementioned examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

3. After completing the above actions and any other development indicated by any response received as a consequence of the actions taken in the paragraphs above, the RO must adjudicate the issue of entitlement to TDIU. If in the course of adjudicating this claim, the RO finds that the rating criteria under 38 C.F.R. 
§ 4.16(a) (2011) have not been met, but the Veteran's service-connected disabilities prevent him from following a substantially gainful occupation, the RO must refer the appeal to the Chief Benefits Director or the Director, Compensation and Pension Service, for extra-schedular consideration on the issue of entitlement to TDIU. If any benefit remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After they have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

No action is required by the Veteran until he receives further notice; however, the Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



____________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs