Citation Nr: 1607922 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-21 896 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial disability evaluation in excess of 40 percent for status post lumbar fusion L3-5, with degenerative changes of the thoracic spine.

2. Entitlement to an initial disability evaluation in excess of 20 percent for left lower extremity radiculopathy.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1977 to August 1977, and January 1988 to December 2007. This matter comes properly before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. Jurisdiction is now with the VA RO in Roanoke, Virginia.

In January 2016, the Veteran filed two separate fully developed claims, one for an increased rating for his cervical spine disorder, to include a temporary total evaluation, and another for an increased rating for his service-connected posttraumatic stress disorder (PTSD). These issues have not yet been adjudicated by the RO; therefore, the Board does not have jurisdiction over them, and they are referred to the RO for appropriate action. 38 C.F.R. § 19.9(b) (2015).

Additionally, in support of his claim for an increased rating for PTSD, the Veteran submitted Tricare records dated June 19, 2014, which were annotated with his notes. On the top of the medical report, the Veteran wrote "TBI" and the body of the report reflects the Veteran sought treatment and told the doctor that he experienced two concussions, one in 1993 and one in 2005, and wondered if a traumatic brain injury (TBI) could be the cause of his sleep disturbance and mild intermittent memory issues. It is unclear if the Veteran wishes to file a claim for residuals of a TBI, and therefore, on remand the RO must contact the Veteran to determine if he is making a claim. If so, the RO must adjudicate this claim in the first instance. 38 C.F.R. § 19.9(b).


FINDINGS OF FACT

1. Throughout the appeal period, the objective medical evidence of record demonstrates the Veteran's back disability was manifested by, at worst, forward flexion to 30 degrees; pain, which increased with use; muscle spasms; and localized tenderness to palpation; there was no evidence of unfavorable ankylosis.

2. Prior to August 13, 2012, the Veteran's left lower extremity radiculopathy was manifested by wholly sensory symptoms, to include numbness and pain.

3. Beginning August 13, 2012, the Veteran's left lower extremity radiculopathy was manifested by, at worst, slight muscular atrophy and a left foot drop; there was no evidence of marked muscular atrophy or complete neuralgia resulting in no active movement of the muscles below the knee.

4. The evidence shows right lower extremity radiculopathy due to the Veteran's service-connected status post lumbar fusion L3-5, with degenerative changes of the thoracic spine. 


CONCLUSIONS OF LAW

1. Throughout the appeal period, the criteria for a disability evaluation in excess of 40 percent for status post lumbar fusion L3-5, with degenerative changes of the thoracic spine, have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5242-5237 (2015).

2. Prior to August 13, 2012, the criteria for a disability rating in excess of 20 percent for left lower extremity radiculopathy have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8720 (2015).

3. Beginning August 13, 2012, the criteria for a disability rating of 40 percent, but no more, for left lower extremity radiculopathy have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8720 (2015).

4. The criteria for a separate compensable evaluation for right lower extremity radiculopathy have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.71a, Diagnostic Codes 5242-5237 Note (1), 4.124a, Diagnostic Code 8720 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2014).

The Veteran's increased rating claims arise from his disagreement with the initial evaluation assigned following the grant of service connection. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed.

The duty to assist the Veteran has been satisfied in this case. The RO has obtained the Veteran's service treatment records and his identified VA and private treatment records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Moreover, the Veteran has been afforded VA examinations that are adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Specifically, the October 2007, November 2007, December 2009, August 2012, May 2013, and November 2015 VA examiners took into account the Veteran's statements and treatment records, which allowed for fully-informed evaluations of the claimed disability. Id. The Veteran also testified before the Board in a March 2015 hearing.

The Veteran's claim was remanded in June 2015 to contact the Veteran to determine if he had additional evidence to provide in support of his claim, to obtain the Veteran's Tricare medical records from February 2012 to the present, and to associate his August 2012 VA spine examination report with the evidence of record. 

The August 2012 VA spine examination report has been associated with the electronic evidence of record. Further, the RO called Tricare to obtain the Veteran's outstanding records and was informed that an authorization from the Veteran was required. The RO sent an October 2015 letter to the Veteran requesting that he complete and return an authorization to allow VA to obtain his Tricare records; the Veteran did not complete and return that authorization, and therefore, the RO was unable to obtain the outstanding records. The June 2015 Board remand directives also instructed the RO to ensure that the Veteran was provided with a VA examination to assess the severity of his back disorder and associated neurological manifestations, and the Veteran underwent a VA examination in November 2015. Despite the fact that the RO was unable to obtain the Veteran's outstanding Tricare records, due to the Veteran's lack of response to their letter, the Board finds there has been substantial compliance with all of its June 2015 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998); see also Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (holding that VA's duty to assist is not a one way street and that if the Veteran wishes help he cannot passively wait for it in circumstances where his own actions are essential in obtaining putative evidence).

As such, there is no indication in the record that additional evidence relevant to the issues being decided herein is available and not part of the record. See Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); see also Shinseki v. Sanders, 556 U.S. 369 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served.").

All service-connected spine disabilities are rated pursuant to The General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula), unless the spinal disability is rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (Incapacitating Episodes Rating Formula). 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. The Veteran's back disability is currently rated as 40 percent disabling under the provisions of 38 C.F.R. § 5242-5237. In the selection of code numbers assigned to disabilities, injuries will generally be represented by the number assigned to the residual condition on the basis of which the rating is determined. With injuries and diseases, preference is to be given to the number assigned to the injury or disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. 38 C.F.R. § 4.27 (2015). The hyphenated diagnostic code in this case indicates that vertebral fracture or dislocation under Diagnostic Code 5235, is the service-connected disorder, and intervertebral disc syndrome, under Diagnostic Code 5243, is a residual condition.

Under the General Rating Formula, ratings related to the thoracolumbar spine are assigned a 10 percent disability rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a, General Rating Formula. A 20 percent disability rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. A 40 percent disability rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent evaluation is warranted if there is unfavorable ankylosis of the entire spine. Id.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. 38 C.F.R. § 4.71a, General Rating Formula at Note (2). The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation, and the normal combined range of motion of the thoracolumbar spine is 240 degrees. Id.

Objective evidence of neurologic abnormalities of the spine are rated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula at Note (1). The Veteran's left lower extremity radiculopathy has been separately evaluated as 20 percent disabling under the Diagnostic Code 8720, relating to neuralgia of the sciatic nerve. See 38 C.F.R. § 4.124a, Diagnostic Code 8720.

Under Diagnostic Code 8720 disability ratings of 10, 20, and 40 percent are warranted, respectively, for mild, moderate, and moderately severe incomplete neuralgia of the sciatic nerve. 38 C.F.R. § 4.124a. A disability rating of 60 percent is warranted for severe incomplete neuralgia with marked muscle atrophy. Id. An 80 percent rating is warranted with complete neuralgia of the sciatic nerve, where the foot dangles and drops, and there is no active movement possible of muscles below the knee, flexion of knee weakened, or very rarely, lost. Id.

The term "incomplete neuralgia," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete neuralgia given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. See 38 C.F.R. § 4.124a. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id.

At an October 2007 VA examination, the Veteran reported persistent low back pain. He indicated the pain was not incapacitating, he could function and perform his daily activities, and that it did not prevent him from working. He denied weakness, fatigability, decreased endurance, incoordination, or flare-ups. On physical examination, there was no tenderness to palpation and no postural abnormalities or fixed deformities; there was increased prominence to the left lumbar paraspinal 

muscles. Range of motion testing revealed forward flexion of the lumbar spine from zero to 55 degrees; extension from zero to between 10 and 15 degrees; left and right lateral flexion from zero to 15 degrees; and left and right lateral rotation from zero to 30 degrees; his combined range of motion was between 125 and 130 degrees. He experienced pain on repetitive motion testing, but no weakness, fatigability, decreased endurance, or incoordination; no motor or sensory abnormalities were noted.

At a November 2007 VA neurological examination, the VA examiner diagnosed mild weakness with sensory deficit in the left leg. In June 2008, the Veteran sought treatment for low back pain radiating into his legs; he reported pain on and off and good relief with Percocet. In September 2008, the Veteran sought treatment for low back pain indicating that it was exacerbated by physical activity; he requested additional pain medication for his back and denied any neurological abnormalities. In January 2009, the Veteran attended a follow-up appointment for back pain and reported that his pain had improved slightly and that he was able to perform stretching exercises. In September 2009, the Veteran reported back pain and weakness with occasional numbness in his right lower extremity.

At a December 2009 VA examination, the Veteran reported daily, but not constant, dull, aching low back pain, with pain radiating down his right leg two to three days a month; he denied flare-ups. The Veteran stated he had mild difficulty dressing and could walk less than a mile before he needed to rest. On physical examination, posture, head position and gait were normal; there were no abnormal spinal curvatures and there was partial ankylosis of the thoracolumbar spine. There was tenderness and pain on motion of the right thoracic sacrospinalis muscles and there were no muscle spasms, localized tenderness, or guarding severe enough to cause abnormal gait or spinal contour. Detailed motor, reflex, and sensory examinations were normal in the upper extremities and left lower extremity; light touch and pin sensation was reduced in the medial aspect of the right foot, and vibratory sensation was reduced in the right big toe. On range of motion testing, forward flexion was from zero to 45 degrees; extension was from zero to 10 degrees; left and right lateral flexion were from zero to 20 degrees; and left and right lateral rotation were 

from zero to 10 degrees; combined range of motion of the thoracolumbar spine was 115 degrees. There was objective evidence of pain on active range of motion and following repetitive motion; there was no additional loss of range of motion on repetitive testing. Straight leg raise testing was positive on the right. The Veteran reported losing approximately one week of work in the past twelve months due to back pain and indicated that his back disorder severely affected his ability to exercise and prevented him from playing sports.

At a December 2011 VA appointment, the Veteran reported pain in his back, which he rated a 6 out of 10. On physical examination, the examiner noted a lack of range of motion, but did not measure range of motion in terms of degrees.

At an August 13, 2012 VA examination, the examiner diagnosed lumbar spondylolisthesis and lumbar radiculopathy of the left lower extremity. The Veteran reported increased pain and decreased range of motion since his December 2009 VA examination, and reported that he now had shooting pain down his left leg into his toes. He managing his symptoms with activity modification, stretching, and Motrin as needed. On physical examination, forward flexion was from zero to 30 degrees; extension was from zero to 20 degrees, with pain at 5 degrees; left and right lateral flexion were from zero to 20 degrees; and left and right lateral rotation were from zero to 10 degrees; his combined range of motion of the thoracolumbar spine was 110 degrees. The examiner did not note the degrees where objective evidence of painful motion began for forward flexion or bilateral flexion and rotation, and it is unclear if there was any such evidence or if the examiner simply failed to record those numbers. Following repetitive use testing, there was no additional limitation of range of motion; the examiner documented functional impairment following repetitive use as less movement than normal, weakened movement, excess fatigability, and pain on movement. There was no localized tenderness or pain to palpation of the joints or soft tissue, guarding, muscle spasms, or muscle atrophy. Sensory testing was normal in the right lower extremity and decreased in the left thigh/knee and foot/toes; straight leg testing was normal, bilaterally. The Veteran reported moderate, intermittent pain and mild numbness in his left lower extremity. The examiner documented involvement of the sciatic 

nerve in the left side and characterized the Veteran's radiculopathy in his left lower extremity as moderate; the examiner determined the Veteran's right side was not affected. There was no evidence of additional neurological abnormalities, intervertebral disc syndrome, or incapacitating episodes. The Veteran reported that his back disability affected his ability to work because he had to get up from a seated position every hour to stretch and walk around and used a special chair.

At a March 2013 VA examination, the Veteran reported daily, constant, dull pain in the center of his low back with "shooting pains" in his left leg traveling to his large toe; he denied flare-ups. On physical examination, forward flexion was from zero to 40 degrees; extension was from zero to 20 degrees; right lateral flexion was from zero to 20 degrees; left lateral flexion was from zero to 25 degrees; right lateral rotation was from zero to 20 degrees; and left lateral rotation was from zero to 30 degrees; his combined range of motion of the thoracolumbar spine was 110 degrees. The examiner found no objective evidence of painful motion and there was no additional limitation in range of motion following repetitive use testing. The examiner described the functional impairment of the thoracolumbar spine after repetitive use as less movement than normal and pain on movement. There was no localized tenderness or pain to palpation for joints and soft tissue of the thoracolumbar spine and no guarding or muscle spasms. Sensory examination and muscle strength testing of the lower extremities was normal, bilaterally; deep tendon reflexes were normal in the right lower extremity, hypoactive in the left knee, and absent in the left ankle. Straight leg raise tests were normal, bilaterally. The Veteran reported no symptoms of radicular pain in his right lower extremity; he acknowledged moderate intermittent pain and mild numbness in the left lower extremity. The examiner noted the Veteran had intervertebral disc syndrome but did not have any incapacitating episodes over the past twelve months. The examiner also found muscle atrophy in the Veteran's right calf, which was one centimeter smaller than left calf. The Veteran's reported his back disorder impacted his work, requiring him to get up from his desk several times a day.

At a June 2014 VA appointment, the Veteran indicated his low back pain slowly progressed over the years and that he was recently referred to pain management. 

He underwent facet joint injection, which improved his back pain from a 9-10 out of 10, to a 7-8 out of 10; he indicated prolonged sitting and walking exacerbated his back pain and described the pain as dull and constant with minor radicular components. The Veteran reported that approximately three years prior, his mother pointed out that his right leg was smaller than his left one; he indicated he was concerned about "lack of sensation" in the back of his left calf but denied any recent strength changes. He stated that for the past 18 months he experienced numbness to his left calf and foot and that spinning class exacerbated the numbness to his left lower extremity.

February 2015 VA treatment notes reflect that a left leg electromyography was consistent with chronic multilevel lumbar radiculopathy involving at least the left L4, L5, and S1 nerve roots; the Veteran reported numbness to his left calf, top and bottom of his left foot, and distal left leg weakness. In March 2015, the Veteran underwent transforaminal epidural steroid injections, and in July 2015, the Veteran reported worsening back pain since 2013, with sharp and shooting pain down his leg and which increased with prolonged sitting. The examiner opined that there was narrowing around the nerves on the Veteran's left side and questioned if decompression could improve his symptoms.

At a November 2015 VA examination, the Veteran indicated he had been seeing several pain specialists and received various pain procedures, to include medial branch block, and epidural and facet joint injections from L3-S1. In the past eighteen months, he began experiencing left foot drop, with trouble walking. The Veteran indicated that walking or standing too long caused him to be unable to move his leg due to severe low back pain. On physical examination, forward flexion and extension were each from zero to 30 degrees and bilateral flexion and rotation were all from zero to 15 degrees; combined range of motion of the thoracolumbar spine was 120 degrees and the examiner noted it was very difficult for the Veteran to bend his upper body forward. The examiner found pain on movement caused functional loss and documented pain during forward flexion and right and left lateral rotation. There was objective evidence of localized tenderness or pain to palpation at the L3-5 levels. On repetitive use testing there was no 

additional loss of function or range of motion; the examiner was unable to say whether pain, weakness, fatigability, or incoordination significantly limited the Veteran's functional ability with repeated use over a period of time without speculating and acknowledged that repeated use caused severe discomfort for the Veteran. While the Veteran's examination was not conducted during a flare-up, the examiner found that the examination was medically consistent with the Veteran's statements describing functional loss during flare-ups. The examiner further noted that the range of motion of the low back was already severely impaired and that during a flare-up the low back would be unable to move as the Veteran stated. There was evidence of muscle spasms and localized tenderness not resulting in abnormal gait or spinal contour; there was no guarding and no muscular atrophy. Muscle strength testing revealed mildly decreased strength in the left lower extremity; deep tendon reflexes were absent, bilaterally, in the ankle and were normal in the bilateral knees. Sensation was decreased, bilaterally, in the lower legs, ankles, feet, and toes, and the examiner found the Veteran's symptoms revealed mild radiculopathy in the right lower extremity and moderate radiculopathy in the left lower extremity. There were no additional neurological abnormalities noted and no ankylosis or intervertebral disc syndrome. Electromyography testing revealed left L4 to S1 territory chronic neurogenic remodeling of the motor units with a final diagnosis of left L4, L5, and S1 chronic radiculopathies. The examiner found the Veteran's back disorder impacted his ability to work because he was unable to walk or stand for more than one hour and that the left lower extremity radiculopathy causing left foot drop was the consequence/progression of a previously failed L3-5 fusion lumbosacral surgery.

Throughout the period on appeal, the Veteran's low back disability does not warrant a rating in excess of 40 percent. There is no evidence that the Veteran has unfavorable ankylosis of his thoracolumbar spine or entire spine warranting a higher rating under the General Rating Formula. See 38 C.F.R. § 4.71a, General Rating Formula. The December 2009 VA examiner documented partial ankylosis of the spine, however, a rating in excess of 40 percent requires, at minimum, unfavorable ankylosis of the entire thoracolumbar spine. There is also no evidence that the Veteran has intervertebral disc syndrome requiring doctor prescribed bed 

rest, and therefore, a rating under the Incapacitating Episodes Rating Formula is also inapplicable. See 38 C.F.R. § 4.71a, Incapacitating Episodes Rating Formula. The Board has also considered evidence of functional loss and whether such evidence would warrant a disability rating in excess of 40 percent. The Veteran has indicated his symptoms severely affected his ability to exercise, prevented him from playing sports, and that during work he had to get up from his desk several times a day to stretch and walk around. He also acknowledged flare-ups, which affected his range of motion and caused severe discomfort. Even accounting for the Veteran's limitations due to flare-ups and pain, the evidence does not demonstrate that he experienced additional functional limitation beyond that noted on range of motion testing or rising to the level of the equivalent of unfavorable ankylosis of the spine. As such, the Board finds that the assigned 40 percent rating adequately contemplates the functional impairment resulting from the Veteran's back disorder. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995).

Turning to the Veteran's left lower extremity radiculopathy, the Board finds that prior to August 13, 2012, the date of a VA examination, the Veteran's symptoms were wholly sensory, warranting, at most, the already assigned 20 percent rating for moderate incomplete neuralgia of the sciatic nerve. See 38 C.F.R. § 4.124a, Diagnostic Code 8720.

In a January 2016 appellate brief, the Veteran's representative asserted that the Veteran's left sided foot drop, which was first shown on the November 2015 VA examination, warranted a 40 percent disability rating, representing moderately severe impairment. The Board agrees and finds that beginning August 13, 2012, the Veteran's symptomatology more closely aligns with a moderately severe rating. At the August 13, 2012, VA examination, the objective medical evidence demonstrated that the Veteran's right calf was one centimeter smaller than his left. At a June 2014 VA medical appointment, the Veteran reported his mother pointed out his right leg was smaller than his left and indicated that he had experienced numbness in his left calf and foot for the past 18 months, which was exacerbated by exercise. At his November 2015 VA examination, the Veteran reported experiencing a left 

foot drop with trouble walking; there was no evidence of muscle atrophy at that examination, and the examiner found the objective evidence of left foot sided drop was due to a failed surgery for the Veteran's back. Given the evidence of slight muscular atrophy, first demonstrated at the August 12, 2013, VA examination and a left sided foot drop, the Board finds the Veteran's symptoms warrant a 40 percent disability rating for moderately severe involvement of the sciatic nerve, beginning August 13, 2012. The Veteran's symptoms do not warrant a 60 percent rating for severe incomplete involvement of the sciatic nerve with "marked" muscular atrophy. Although there was evidence of slight muscular atrophy at the August 12, 2013 VA examination, the medical evidence demonstrates the difference between the Veteran's lower extremities was only one centimeter and, in fact, at the most recent VA examination there was no evidence of muscular atrophy whatsoever. The criteria for an 80 percent rating have also not been met; while there was evidence of a foot drop, there is no evidence that active movement of the muscle below the knee was impossible and there is no evidence of complete neuralgia of the left lower extremity.

The Board finds that a separate compensable rating is warranted for right lower extremity radiculopathy due to the Veteran's service-connected status post lumbar fusion L3-5, with degenerative changes of the thoracic spine. 38 C.F.R. § 4.71a, General Rating Formula, Note (1). At a VA examination in December 2012, the Veteran complained of pain radiating down his right leg, two to three times a month. On physical examination, light touch and pin sensation was reduced in the medial aspect of the right foot, and vibratory sensation was reduced in the right big toe. Straight leg raise testing was positive on the right. At a March 2013 VA examination, the examiner found muscle atrophy in the Veteran's right calf, which was one centimeter smaller than left calf. At a November 2015 VA examination, deep tendon reflexes were absent in the right ankle and sensation was decreased in the right lower leg, ankle, foot, and toes, and the examiner found the Veteran's symptoms revealed mild radiculopathy in the right lower extremity. 

The Veteran has not reported and there is no objective evidence of any additional neurological manifestations attributable to his low back disorder.

Generally, evaluating a disability using either the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2015). However, because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b) (2015). 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate, a task performed either by the RO or the Board. Id.; see Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating [S]chedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the Rating Schedule, the assigned schedular evaluations are, therefore, adequate, and no referral is required.

The Board finds that the Veteran's disability picture is not so unusual or exceptional in nature as to render the already assigned rating inadequate. The Veteran's service-connected low back disorder and left lower extremity radiculopathy has been evaluated under the correct diagnostic codes, which specifically contemplate the level of occupational and social impairment caused by his low back disorder with left lower extremity radiculopathy. See 38 C.F.R. §§ 4.71a, Diagnostic Code 5337; 4.124a, Diagnostic Code 8720. Throughout the appeal period, the Veteran's low back disorder was manifested by, at worst, forward flexion to 30 degrees; pain, which increased with use; muscle spasms; and localized tenderness to palpation; there was no evidence of unfavorable ankylosis. Prior to August 13, 2012, the 

Veteran's left lower extremity radiculopathy was manifested by wholly sensory symptoms, and beginning August 13, 2012, the Veteran's left lower extremity radiculopathy was manifested by slight muscular atrophy and left foot drop, not resulting in complete neuralgia. Ratings in excess of those assigned are provided for certain manifestations of these disorders, but the medical evidence demonstrates that those manifestations are not present in this case. The ratings assigned reasonably describe the Veteran's disability level and symptomatology, and the Veteran has not reported any symptoms not contemplated by the schedular criteria. Consequently, the Board concludes that the schedular evaluations are adequate and that referral of the Veteran's case for extraschedular consideration is not required. See 38 C.F.R. §§ 4.71a, Diagnostic Code 5337; 4.124a, Diagnostic Code 8720; see also VAOGCPREC 6-96; 61 Fed. Reg. 66749 (1996).

The Board has also considered whether staged ratings would be appropriate. While there may have been day-to-day fluctuations of the Veteran's symptoms, the evidence of record shows no distinct time periods during which the Veteran's symptoms have varied to such an extent that ratings greater than those continued or assigned herein would be warranted under any diagnostic code. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The Board has considered the benefit of the doubt doctrine, however, as the preponderance of the evidence is against ratings in excess of those continued or assigned herein, it is not applicable. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 


ORDER

A disability rating in excess of 40 percent for status post lumbar fusion L3-5 with degenerative changes of the thoracic spine is denied.

Prior to August 13, 2012, a disability rating in excess of 20 percent for left lower extremity radiculopathy is denied.

Beginning August 13, 2012, a disability rating of 40 percent, but no more, for left lower extremity radiculopathy is granted, subject to the laws and regulations governing the payment of monetary benefits.

A separate compensable evaluation for right lower extremity radiculopathy is granted, subject to the laws and regulations governing the payment of monetary benefits. 



____________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs